T.C. Memo. 2011-226

UNITED STATES TAX COURT

GARY A. LYSENG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13394-10.                    Filed September 21, 2011.

<u>Jon J. Jensen</u>, for petitioner.

<u>David L. Zoss</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined a $5,023 deficiency in
petitioner's 2007 Federal income tax plus a $1,005 accuracy-
related penalty under section 6662(a).

The issues for decision are:  (1) Whether petitioner had a
tax home in Bemidji, Minnesota; (2) whether petitioner is
entitled to claimed unreimbursed employee business expenses; and

(3) whether petitioner is liable for the section 6662(a) accuracy-related penalty.

The trial of this case was held on March 31, 2010, in St. Paul, Minnesota.

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for 2007, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

From childhood petitioner has lived in and around Bemidji, in north central Minnesota. Petitioner purchased the Bemidji home in which he lived during 2007 in 2000. Petitioner, his father, and his fiance live in this home.

Petitioner is a contract laborer and works maintenance jobs at nuclear power plants and other utility sites. Petitioner's jobs last less than 1 year, and most last only a few months. By their nature petitioner's jobs are temporary, and petitioner seldom works twice for the same employer.

Petitioner is a member of the chapter of the Laborer's Union (union) which serves workers in Bemidji. At his home address in Bemidji and through this union, petitioner is contacted regularly about available temporary jobs in Minnesota and other States.

Before 2007, in addition to working at jobs in Bemidji, petitioner worked temporarily at jobsites in Bena, Park Rapids,

and Wadena, Minnesota, approximately 25, 50, and 75 miles, respectively, from Bemidji.  Also in prior years, petitioner worked temporarily at nuclear power plants in Red Wing, Minnesota, New Hampshire, and New Jersey.

Petitioner's jobs at nuclear power plants generally last a few months as part of government-mandated biannual safety checks.

During January and February 2007, petitioner had no job and lived in his home in Bemidji.

For 6 weeks, from early March to mid-April 2007, petitioner worked at a Northern States Power (NSP) nuclear power plant in Monticello, Minnesota.  Monticello is approximately 190 miles from Bemidji, and during the week petitioner would stay overnight in a motel in Monticello.

Petitioner regularly recorded in his calendar book his automobile mileage relating to his job with NSP, which in 2007 totaled 1,090 miles and which included driving to and from Monticello from his home in Bemidji.

From mid-April through most of August 2007, petitioner had no job and lived in his home in Bemidji.

In late August 2007, through a union contact petitioner began a job in Utah and Wyoming with Sheehan Pipeline Construction Co. (Sheehan).  Petitioner understood that his job with Sheehan would last only a few months.  Petitioner's job involved maintenance work on an underground pipeline.

In late August 2007, petitioner drove his automobile to Utah to begin work with Sheehan. Petitioner recorded in his calendar book 1,200 automobile miles for this trip to Utah. While in Utah and Wyoming working for Sheehan, petitioner had access to another automobile which he used for personal travel, and he apparently stayed overnight in a travel trailer he owned.

Petitioner paid $881 in union dues while working for Sheehan.

While working for Sheehan petitioner drove his own automobile to perform his work assignments along the Sheehan pipeline, sometimes driving over 100 miles a day. Petitioner kept track of the mileage driven for Sheehan and recorded the mileage in his calendar book. By the end of 2007 petitioner had recorded 20,975 automobile miles working for Sheehan, which included the trip from Bemidji to Utah.

Petitioner worked for Sheehan in Utah and Wyoming until March 2008.

In addition to wages, Sheehan paid petitioner a per diem of $148 for meals and lodging and $354 per week as an automobile travel allowance.

For Christmas vacation petitioner took a commercial airline flight from Utah to Minnesota to visit his family in Bemidji.

On December 31, 2007, petitioner purchased a computer.

On his 2007 Federal income tax return, among other things, petitioner included as income both the total per diem payments and the total weekly automobile travel allowance he received from Sheehan in 2007.

On his 2007 Federal income tax return petitioner attached a Schedule A, Itemized Deductions, on which he claimed deductions for unreimbursed employee business expenses of $24,742 ($11,284 in automobile expenses, $923 in meals and entertainment expenses, and $12,535 in other miscellaneous business expenses).

On audit, respondent disallowed the $24,742 petitioner claimed as unreimbursed employee business expenses on the grounds that Bemidji was not petitioner's tax home, that petitioner did not have a tax home, and that petitioner failed to substantiate the expenses. Respondent also determined that petitioner was liable for a section 6662(a) accuracy-related penalty on the total tax deficiency.

At trial petitioner conceded some of the claimed expenses, and he now claims only the following as deductible unreimbursed employee business expenses: $11,284 for automobile expenses,[1] $1,422 for union dues, $100 for steel-toe boots, $1,417 depreciation on his travel trailer, $404 for airfare, $100 for

---

[1]Petitioner multiplied the NSP 1,090 work miles, the 1,200 miles to Utah, and the Sheehan 20,975 work miles by the standard mileage rate of 48.5 cents per mile for a total of $11,284. See Rev. Proc. 2006-49, 2006-2 C.B. 936.

laundry services, and $600 for lodging while working for NSP in Monticello.  Petitioner also still claims deductions for expenses in unspecified amounts for a computer, a cell phone, a camera, vehicle permits, and towing fees.

OPINION

We first decide the threshold issue of whether petitioner's home in Bemidji was his tax home for purposes of section 162(a)(2).

Section 162(a)(2) allows taxpayers to deduct travel expenses incurred while away from home in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 469 (1946).  In order to deduct travel expenses a taxpayer generally must show that he or she was away from home overnight when the expenses were incurred. Id.  The purpose of the deduction is to alleviate the burden on taxpayers whose business or employment require them to incur duplicate living expenses.  Kroll v. Commissioner, 49 T.C. 557, 562 (1968).  For purposes of section 162(a)(2) the word "home" generally means the vicinity of a taxpayer's principal place of work or employment, not the taxpayer's personal residence.  Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, supra at 561-562.

A taxpayer may be treated as having no principal place of work when the location of his work is always temporary.  Kroll v.

Commissioner, supra at 557; Albert v. Commissioner, 13 T.C. 129, 131 (1949); Farran v. Commissioner, T.C. Memo. 2007-151.

However, when a taxpayer has no principal place of work, and when the taxpayer maintains a personal residence or family home remote from his temporary jobsite, the taxpayer's home may be treated as his tax home if: (1) The taxpayer incurs duplicate living expenses while traveling and maintaining the home; (2) the taxpayer has personal and historical connections to the home; and (3) the taxpayer has a business justification for maintaining the home. Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981), revg. T.C. Memo. 1979-299; Minick v. Commissioner, T.C. Memo. 2010-12; see also Rev. Rul. 73-529, 1973-2 C.B. 37.

As we have found, petitioner's work consisted of temporary jobs that lasted only a few months. Because his jobs were temporary, during 2007 petitioner had no principal place of work. Petitioner's home expenses were duplicated when he traveled from his home in Bemidji to his temporary jobsites, and his home has historically been in and around Bemidji.

Petitioner's union has helped him find work in Minnesota, and it appears reasonable that he will continue to use his union and his address in Bemidji to obtain work in Minnesota. See Williams v. Commissioner, T.C. Memo. 1990-467 (identifying the taxpayer's membership in and continued contacts with a local union as a business justification for maintaining a tax home away

from temporary jobs); <u>Banekatis v. Commissioner</u>, T.C. Memo. 1988-474 (same).  Petitioner had an adequate business justification for maintaining a home in Bemidji.

We conclude that for 2007 Bemidji should be treated as petitioner's tax home.

Petitioner's travel and other reported expenses, however, are still subject to the substantiation requirements of the Code and the regulations.  See secs. 6001, 274(d); sec. 1.6001-1(a), Income Tax Regs.

Deductions are strictly a matter of legislative grace, and taxpayers bear the burden of showing that their claimed deductions satisfy the specific requirements of the relevant Code provision.  See Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 50 U.S. 79, 84 (1992).[2]

In general, taxpayers must substantiate claimed deductions with evidence such as invoices or receipts that establish that the expenses were actually incurred and the business purpose for the expenses.  <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Petitioner now claims a deduction for union dues of $541 while working for NSP and $881 while working for Sheehan.  In support of the claimed $541, petitioner provided a pay stub from

---

[2]Petitioner has not argued that the burden of proof has shifted to respondent.

NSP which labels the $541 as "Crft Tx Ad". This label does not adequately indicate that the $541 represented union dues. Furthermore, it is not clear that petitioner paid the $541 because this amount is listed on his pay stub as "earnings", rather than as an expense. Petitioner has failed to substantiate the claimed $541 deduction for union dues.

In support of the claimed $881, petitioner provided a pay stub from Sheehan which shows the $881 as an expense deduction and labels the $881 "dues". We conclude that this pay stub, combined with petitioner's testimony, substantiates this claimed deduction.

Petitioner claims a $100 deduction for steel-toe boots allegedly required for work at NSP. The NSP pay stub provided to petitioner lists $100 for "Safety Shoe" under "earnings". It is unclear from the pay stub whether petitioner paid $100 for safety shoes, received a $100 reimbursement for safety shoes, or was provided safety shoes with a value of $100. Petitioner has failed to substantiate this claimed deduction.

Petitioner claims a $1,417 depreciation deduction that is based on a claimed cost basis in the travel trailer he stayed in while working in Utah and Wyoming. Petitioner provided no evidence substantiating the trailer's cost basis--no bill of sale, no canceled check, and no third-party corroborating

testimony.  Petitioner has failed to substantiate the claimed depreciation deduction on the travel trailer.

Regarding his claimed deductions for laundry services, vehicle permits, and towing fees, petitioner has provided no evidence to substantiate these expenses, and they are not allowed.

To substantiate the claimed expenses for automobile mileage, a computer, a cell phone, a camera, lodging in Monticello, Minnesota, and airfare, petitioner has the added burden to establish:  (1) The amount of each expense; (2) the time and place when petitioner incurred the expense; and (3) the business purpose.  See sec. 1.274-5T(b)(2), (6), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985); sec. 1.280F-6(b), Income Tax Regs.

For 2007 the Commissioner allows taxpayers to calculate the amount of deductible automobile expenses by using the "standard mileage rate" of 48.5 cents multiplied by the number of miles driven for business.  See Rev. Proc. 2006-49, sec. 5.01, 2006-2 C.B. 936, 938.  This standard mileage rate may be used in lieu of actual automobile expenses.  Id.  Using the standard mileage rate aids only in calculating the amount of the claimed expense; the taxpayer is still required to show the actual miles, the time and

place, and the business purpose of the travel. Nicely v.
Commissioner, T.C. Memo. 2006-172; sec. 1.274-5(j)(2), Income Tax
Regs.

If the taxpayer is reimbursed for automobile expenses, he
may not claim a deduction for the expenses unless the amounts
paid as reimbursements are also included as income on the
taxpayer's tax return. Sec. 1.62-2(c)(5), Income Tax Regs.

Petitioner used his automobile regularly on his jobs and
received an automobile expense reimbursement for this use;
however, petitioner included the reimbursements received as
income on his tax return. Petitioner, therefore, may claim as
deductions substantiated automobile expenses that relate to his
jobs.

Petitioner recorded a total of 23,265[3] automobile miles in
connection with his work with NSP and Sheehan. Petitioner
regularly and accurately recorded his mileage in his calendar
book. His calendar book adequately establishes the miles
traveled and the dates of the travel, and petitioner's credible
testimony establishes the business purpose for the automobile
mileage incurred while he was working for NSP and Sheehan.

---

[3]The total of 23,265 miles comprises 20,975 miles (Sheehan work), plus 1,200 miles (travel to Utah), plus 1,090 miles (NSP work).

Petitioner has adequately substantiated the claimed automobile expenses of $11,284.[4]

Petitioner provided no evidence to show that the computer he purchased in December 2007 had a business purpose. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Petitioner has failed to substantiate his claimed deduction for his computer.

Petitioner provided no documentation to verify the claimed $404 cost of the airfare to fly home from Utah. Petitioner has failed to adequately substantiate this claimed deduction.

Petitioner has provided no documentation or credible testimony to substantiate the claimed deductions for a cell phone, a camera, and lodging in Monticello, Minnesota, and he is not entitled to these claimed deductions.

Petitioner may deduct $11,284 for unreimbursed automobile expenses and $881 for union dues. All other claimed deductions are disallowed.

Section 6662(a) and (b)(1) imposes an accuracy-related penalty of 20 percent on any portion of an underpayment of tax attributable to negligence or to disregard of rules or regulations.

---

[4]The total of 23,265 miles times 48.5 cents per mile (standard mileage rate) equals $11,284. See Rev. Proc. 2006-49, sec. 5.01, 2006-2 C.B. at 938.

While we recognize that petitioner has provided adequate records to substantiate a portion of his claimed deductions, he provided almost no evidence to substantiate the claimed deductions which we disallow.  Petitioner's attempt to claim and benefit from deductions where he had no evidence to substantiate them is grounds for imposing the section 6662(a) accuracy-related penalty on that part of the tax deficiency that we sustain.  See Higbee v. Commissioner, 116 T.C. 438 (2001).

We sustain respondent's imposition of the section 6662(a) accuracy-related penalty on the tax deficiency after taking into account the allowed deductions.

To reflect the foregoing,

Decision will be entered under Rule 155.