T.C. Memo. 2015-204

UNITED STATES TAX COURT

WSK & SONS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

WILLIAM S. KARRAS AND SHANA KARRAS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 27370-12, 27429-12.          Filed October 15, 2015.

J. David Horspool, for petitioners.

Jenny R. Casey, Miles D. Friedman, Eric M. Heller, Mindy S. Meigs, and

Kim-Khanh Thi Nguyen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  In these consolidated cases, respondent determined

deficiencies and penalties as follows:

[*2] WSK & Sons, Inc., Docket No. 27370-12

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2008 | $48,528 | $9,705.60 |

William S. & Shana Karras, Docket No. 27429-12

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2008 | $9,993 | $1,998.60 |
| 2009 | 5,511 | 1,102.20 |

Any reference to the tax year 2008 for WSK & Sons, Inc. (petitioner), is to its applicable fiscal year ended February 28, 2009. Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues remaining for decision are whether petitioner is entitled to a $39,321 deduction for advertising expenses for 2008; whether petitioner is entitled to a deduction for depreciation in excess of the amount that respondent allowed for 2008; and whether petitioners are liable for section 6662(a) penalties (petitioner for 2008 and William S. Karras and Shana Karras (Karrases) for 2008 and 2009).

**[*3]**                           FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time their petitions were filed, the Karrases resided in California, and petitioner had its principal place of business in California.

Petitioner is a California corporation that constructs and installs gas station fuel delivery systems, and its primary customer is Costco Wholesale Corp. (Costco). It operates on a fiscal tax year ending on February 28 and uses the cash method of accounting. For the disputed years, the Karrases were the shareholders of petitioner, whose office was at the Karrases' home. William S. Karras (WSK) ran the day-to-day field operations of petitioner as its president. The Karrases' two adult sons, Robert J. Karras and William B. Karras (WBK), also worked for petitioner at that time.

WSK entered into a rental agreement with Estate Properties International, Inc., to rent a beachfront home at Monarch Beach, California, from December 26, 2008, through January 2, 2009. The rent was $22,950, which included a $5,000 fully refundable security deposit. Guest names were written as "William & Shana Karras Family", and the agreement indicated that there would be 10 adults. "William & Shana Karras/W.S.K. & Sons Inc." was written in the "Tenant Print

[*4] Name(s)" field beneath the Karrases' signatures. WSK provided his personal credit card information for the requested credit card authorization in the agreement.

WBK participated in the weeklong rental at the beachfront home. His fiance, some of her family, and a few of his friends were also at the rental home during the week. On January 3, 2009, the day after the rental ended, he and his fiance were married.

Petitioners' tax returns for the years in issue were prepared by Horspool & Co., Inc. The Karrases timely filed their joint Forms 1040, U.S. Individual Income Tax Return, for 2008 and 2009, and petitioner timely filed Form 1120, U.S. Corporation Income Tax Return, for its tax year ended February 28, 2009. On its return, petitioner claimed a deduction of $39,321 for advertising. The advertising deduction included payments that petitioner made for, inter alia, expenses related to WBK's wedding and purchases at Bass Pro Shops.

Petitioner's return also reported a claimed depreciation deduction of $76,006. Listed property related to this deduction included a 2003 GMC Sierra truck and a 2005 Hummer vehicle, the title owner of both being Shana Karras, and a 2008 GMC Sierra truck (2008 truck), the title owner being WSK (collectively, three vehicles). On an attached Form 4562, Depreciation and Amortization,

[*5] petitioner made a section 179 election to fully deduct the claimed $54,559 acquisition cost of the 2008 truck for 2008.

The Internal Revenue Service (IRS) selected petitioner's 2008 tax return and the Karrases' 2008 and 2009 tax returns for examination. When an IRS agent went to petitioners' residence/place of business to conduct the audit, the three vehicles were not there. During the audit, petitioner provided a document titled "2008 Federal Summary Depreciation Schedule" (depreciation schedule) that showed, in part, the following:

| No. | Description | Date Acquired | Date Sold | Cost/ Basis | Bus. Pct | Cur 179/ SDA | Prior 179/ SDA/ Depr. | Method | Life | Current Depr. |
|---|---|---|---|---|---|---|---|---|---|---|
| Form 1120 | | | | | | | | | | |
| | Auto / Transport Equipment | | | | | | | | | |
| 1 | Truck - Sierra | 3/01/04 | | ([1]) | ([1]) | ([1]) | ([1]) | )B HY | 5 | 3,463 |
| 2 | Truck - GMC | 11/30/04 | | ([1]) | ([1]) | ([1]) | ([1]) | )B HY | 5 | 3,850 |
| 12 | '08 GMC Sierra | 6/30/08 | | ([1]) | ([1]) | ([1]) | ([1]) | )B HY | 5 | 0 |
| • | Total Auto / Transport Equipment | | | | | | | | | 7,313 |

[1]If entries were entered in these fields, they were obscured (as partially was the "Method" field) by a note that read "Missing Invoices for Equip + Furniture Purchases 61872 76006").

Petitioner also provided an excerpt from its general ledger titled "Query Y-T-D Detail" with the header "Advertising & Promotion" (advertising detail sheet) for the period ended February 28, 2009. Showing a balance of $39,321.41, the advertising detail sheet listed 17 expenses, including a $5,930.88 item for "AMEX

[*6] CHARGES STMT 7/24" on July 24, 2008, a $22,950 item for "PRUDENTIAL PROP RENTAL" on November 28, 2008, and a $976.41 item for "DC-BASS PRO SHOPS" on December 26, 2008. Petitioner also provided a $976.41 receipt from Bass Pro Shops dated December 24, 2008.

As a result of the examination, the IRS disallowed $61,872 of petitioner's depreciation expense deduction (the amount attributable to the three vehicles). It also disallowed petitioner's entire advertising expense deduction.

At trial petitioners presented a retail installment contract between WSK and Hatfield Buick GMC that showed a total sale price of $57,083.27 for the 2008 truck. They also produced a single page of one of petitioner's Wells Fargo Bank statements that showed an August 25, 2008, debit made by Shana Karras for a "GMAC" payment of $948.99.

## OPINION

Personal, living, and family expenses are generally not deductible. Sec. 262. On the other hand, section 162 allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". For an expenditure to be an ordinary and necessary business expense, generally the taxpayer must show a bona fide business purpose for the expenditure, and there must be a proximate relationship between the expenditure

**[\*7]** and the business of the taxpayer. See Challenge Mfg. Co. v. Commissioner, 37 T.C. 650, 660-661 (1962); see also sec. 1.162-1(a), Income Tax Regs.

Taxpayers are required to maintain sufficient records to establish the amount and purpose of any deduction. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), (e), Income Tax Regs.; see also Lyseng v. Commissioner, T.C. Memo. 2011-226, slip op. at 8 ("In general, taxpayers must substantiate claimed deductions with evidence such as invoices or receipts that establish that the expenses were actually incurred[.]"). They also have the burden of proving their entitlement to deductions claimed. Rule 142(a); see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), aff'g T.C. Memo. 1972-133. The burden may shift to respondent under section 7491(a)(1) and (2), but petitioners did not satisfy conditions for that shift, particularly the substantiation requirements and maintenance of all required records. The burden of proof therefore remains with petitioners.

Advertising Expense Deduction

Although petitioner contests the disallowance of the entire advertising expense deduction of $39,321.41, it addresses only two particular items:  (1) the $22,950 expense for a "corporate retreat" allegedly held at the beachfront rental

**[*8]** property and (2) the $5,930 expense for a Washington State fishing trip where the Karrases allegedly hosted Costco executives. Petitioner argues that the retreat served a legitimate business purpose by enhancing employer-employee relationships for future productivity and preserving and expanding petitioner's client relationship with Costco. Likewise, it asserts that the cost of the fishing trip was "appropriate and helpful" for the development of its business and its continuing relationship with Costco, citing <u>Commissioner v. Tellier</u>, 383 U.S. 687, 689 (1966).

Petitioner provided little documentation of these expenses--primarily a self-generated advertising detail sheet with no detail about these two items (and refers to the corporate retreat and fishing trip as "PRUDENTIAL PROP RENTAL" and "AMEX CHARGES STMT 7/24", respectively). The only stipulated receipt in the record is a December 24, 2008, Bass Pro Shops receipt for $976.41, and it does not seem to be related to the fishing trip in issue, the alleged cost of which would have been incurred before July 24, 2008. No explanation was given as to how this receipt related to petitioner's business.

The rental agreement between WSK and Estate Properties International, Inc., presumably negotiated by Prudential California Realty, is also in evidence. While the agreement shows a total rent of $22,950 ($5,000 of which was a

**[*9]** refundable deposit) and a credit card authorization, it does not establish that this expense was actually paid.

In an effort to bolster this insufficient documentation, petitioner relies heavily upon WBK's testimony. WBK testified that he is a technician, engineer, and "almost a job superintendent" of petitioner, for which he counsels, programs, constructs, and does electrical work. He also stated that he was not involved in petitioner's banking or accounting. Nevertheless, in reference to the July 24 entry of $5,930 on the advertising detail sheet, WBK attested that his parents flew to Washington to meet Costco's director of operations for gasoline and that they hosted a fishing trip for Costco executives.

WBK did not state whether he witnessed third-party records, statements, or receipts verifying that this expense was paid or why such documents could not be produced. The record does not reflect his having attended the fishing trip, thus he has no firsthand knowledge as to whether it actually took place, who attended it, or how much business-related expense was incurred. See Chagra v. Commissioner, T.C. Memo. 1991-366, 62 T.C.M. (CCH) 347, 367 (1991) (determining testimony to be vague and lacking probative value where, in part, the witness did not personally observe much of the events about which he testified but, instead, relied on secondhand sources), aff'd without published opinion, 990

**[*10]** F.2d 1250 (2d Cir. 1993). The Karrases, who actually took the fishing trip, did not appear at trial and did not testify. Petitioner has not properly substantiated this expense.

WBK did, however, attend the event held at the beachfront rental home. He testified that a large beach house was rented to hold petitioner's weeklong company meeting followed by entertainment and that "just the vendors and the subcontractors * * * [were] invited, along with our employees." He then testified that his fiance, some of her family, and a few of his friends showed up at the rental home because "we ended up sponsoring a--hosting a fishing trip shortly after as well." While unsure of the number of employees in attendance (somewhere between 5 and 10), he stated that more than 30 people attended the meeting.

WBK also affirmed that his wedding was on January 3, 2009, the day after the meeting ended. Petitioners had stipulated that the advertising deduction included payments that petitioner made for the personal expenses of this wedding. WBK did not clarify what part of the rent expense or the overall advertising expense was not related to his nondeductible wedding expenses. He did not disclose whether the $5,000 security deposit had been refunded. He did not explain any other item on the advertising detail sheet.

**[*11]** Overall, WBK's testimony about the advertising expense was vague, uncorroborated, and led by petitioners' counsel.  We are not required to accept his testimony and do not do so.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Bennett v. Commissioner, T.C. Memo. 1997-145, slip op. at 22-23, aff'd without published opinion, 141 F.3d 1149 (1st Cir. 1998).  We hold that petitioner did not properly substantiate any of its advertising expenses and thus is not entitled to any deduction.

Depreciation Expense Deduction

Relying on the "benefits and burdens of ownership" test, petitioner next argues its entitlement to the claimed depreciation and section 179 expensing deductions.  See generally Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1237-1238 (1981) (using multiple factors from caselaw as guideposts to determine ownership of property).  It contends that these deductions are based upon its investment in and actual ownership of the three vehicles rather than the possession of bare legal titles.

A reasonable depreciation deduction may be allowed for the "exhaustion, wear and tear" of property used in a trade or business.  Secs. 161, 167(a)(1).  To substantiate entitlement to a depreciation deduction, a taxpayer not only has to show that the property was used in a business but also must establish the

**[\*12]** property's depreciable basis by showing the cost of the property, its useful life or recovery period, and its previously allowable depreciation. See, e.g., Cluck v. Commissioner, 105 T.C. 324, 337 (1995). If a taxpayer has no capital investment in property, she or he has no right to depreciation deductions with respect to the capital asset. Miller v. Commissioner, 68 T.C. 767, 775 (1977).

Alternatively, a taxpayer may elect to treat the cost of certain property used in an active trade or business as a current expense in the year that property is placed in service. Sec. 179(a), (d). If the property is used for both business and other purposes, then the portion of the cost that is attributable to the business use is eligible for expensing under section 179 but only if more than 50% of the use is for business purposes (predominant use requirement). See sec. 1.179-1(d), Income Tax Regs.

Either way, additional requirements of heightened substantiation must also be met for proving the business use of certain assets, including "listed property". See sec. 274(d); see, e.g., Mears v. Commissioner, T.C. Memo. 2013-52, at \*22 (considering section 274(d) requirements with respect to applicable section 167 deductions); Singh v. Commissioner, T.C. Memo. 2009-36, slip op. at 4 (considering section 274(d) requirements with respect to an applicable section 179 deduction). Passenger automobiles and any other property used as a means of

[*13] transportation are listed property.  Sec. 280F(d)(4)(A)(i) and (ii).  To claim expenses related to listed property, taxpayers must corroborate their own statements with additional substantiation that adequately establishes the amount, time, place, and business purpose of these expenditures.  Sec. 274(d)(4) and flush language; see also sec. 1.274-5T(b)(6), (c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

Petitioner again relies predominantly on WBK's testimony to substantiate these deductions.  WBK attested that the 2008 truck is currently used exclusively by him to pull a job trailer for petitioner's business.  When questioned about how many other vehicles petitioner owns, he answered:  "I believe one more.  I'm not too clear on how many they actually own.  We only use the one truck for hauling the trailer, which I'm responsible for."  When asked, more specifically, what vehicles petitioner owned in addition to the 2008 truck in 2008, he answered:  "WSK-wise, I'm not very sure on what other vehicles they might have used for the company."  When asked whether he recalled if his father had a work truck in 2008 that was used in petitioner's business, WBK stated that he did not recall.  He also stated that petitioner made all payments on the 2008 truck.

This testimony does not show that petitioner had capital investments in the 2003 GMC Sierra truck and the 2005 Hummer or that they were used in its

**[\*14]** business.  Even with the documents petitioner produced at trial, it remains unclear who owned the 2008 truck or when it was placed in service.  Regardless of capital investment or ownership, petitioner failed to prove entitlement to the depreciation expense deduction.

Neither WBK's testimony nor petitioner's self-generated depreciation schedule establishes any cost bases or previously allowable depreciation of the older two vehicles.  (The depreciation schedule actually offers less information than petitioner's Form 4562.)  Additionally, his testimony did not address whether the 2008 truck met the predominant use requirement in 2008.  His uncorroborated testimony as to petitioner's depreciable property for the year in issue is insufficient to carry petitioner's burden of proof.

Moreover, petitioner failed to introduce records, mileage logs, receipts, or other credible evidence that would satisfy the heightened requirements of section 274(d) for any of the three vehicles.  Neither taxpayers nor the Court may estimate permissible deductions for expenses that do not satisfy the strict substantiation requirements of section 274(d).  See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969).  Accordingly, we sustain respondent's determination that petitioner is not entitled to a depreciation expense deduction or a section 179 deduction beyond what has already been allowed.

**[*15]** <u>Section 6662(a) Penalties</u>

Respondent determined section 6662(a) penalties for petitioner's 2008 tax year and the Karrases' 2008 and 2009 tax years. Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations, or a substantial understatement of income tax. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard. <u>See</u> sec. 1.6662-3(b)(1) and (2), Income Tax Regs. Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. <u>Id.</u> subpara. (2). For a C corporation, an understatement of income tax is substantial if it exceeds the lesser of 10% of the tax required to be shown on the return (or, if greater, $10,000) or $10 million. Sec. 6662(d)(1)(B).

Under section 7491(c), the Commissioner bears the burden of production with respect to the liability of an individual for penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447; <u>see also</u> <u>NT, Inc. v. Commissioner</u>,

**[*16]** 126 T.C. 191, 195 (2006) (noting that section 7491(c) applies only to the liability of an individual for a penalty and thus does not apply to a corporate taxpayer). Once the Commissioner has met the burden of production, the taxpayer must come forward with persuasive evidence that the penalty is inappropriate--for example, by showing that he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449. Respondent asserts that the Karrases are liable for the penalties because of their negligence. Contrary to their tax returns, the Karrases stipulated that they received unreported income in 2008 and 2009 and that they were not entitled to certain rental expense deductions claimed for those years. The stipulated omission of income and unwarranted deductions by the Karrases satisfy respondent's burden of showing that section 6662(a) penalties are appropriate. Petitioners are thus required to show that the penalties should not be imposed.

At trial petitioners called as a witness Brook Horspool of Horspool & Co., Inc., the company that prepared their returns for the years in issue. He was asked inappropriate questions calling for his opinion that the returns were correct. Even after the Court instructed that it did not need the witness' opinion of the correctness of the tax returns but, instead, wanted to know what happened with regard to the preparing of the returns, Brook Horspool still did not testify about his

[*17] qualifications as a tax professional, what information was provided to him to prepare the returns, who provided that information, what advice, if any, he gave to petitioners, or his basis for such advice. (He did not even testify that he prepared petitioners' returns for the years in issue.)

While the witness may have been called to suggest that petitioners reasonably relied on a tax professional, that argument was never made. See generally sec. 1.6664-4(b)(1), Income Tax Regs. (providing that the determination as to whether a taxpayer acted with reasonable cause and good faith depends upon all the pertinent facts and circumstances). Even if the argument had been presented, the Karrases did not testify; thus, there is no evidence that petitioners relied on anyone with regard to their returns. In any event petitioners failed to show any ground for relief from the penalties for the years in issue.

We have considered other arguments of the parties, but they are irrelevant, unsupported by the record or by authority, or otherwise without merit.

To reflect the foregoing and to give effect to the parties' concessions,

Decisions will be entered

under Rule 155.