T.C. Memo. 2017-49

UNITED STATES TAX COURT

SAEID ZOLGHADR AND MANDANA ZOLGHADR, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19241-14.                          Filed March 22, 2017.

Saeid Zolghadr and Mandana Zolghadr, pro sese.

Christopher R. Moran, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge:  With respect to petitioners' Federal income tax for 2006-
2009, the Internal Revenue Service (IRS or respondent) determined deficiencies,
additions to tax, and penalties as follows:

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 2006 | $30,222 | $6,260 | $6,044 |
| 2007 | 20,845 | 4,167 | 4,168 |
| 2008 | 20,340 | 4,508 | 4,068 |
| 2009 | 3,812 | -0- | 762 |

The issues for decision are: (1) whether petitioners received unreported income in 2006-2009; (2) whether petitioners are entitled to deduct expenses on Schedules C, Profit or Loss From Business, for 2006-2009, in excess of the amounts respondent allowed; (3) whether petitioners are entitled to deduct mortgage interest claimed on Schedules A, Itemized Deductions, for 2006-2009, in excess of the amounts respondent allowed; (4) whether petitioners are entitled to deduct mortgage interest claimed on a Schedule E, Supplemental Income and Loss, for 2009; (5) whether petitioners are liable for late-filing additions to tax for 2006-2008; and (6) whether petitioners are liable for accuracy-related penalties for all years at issue. With minor exceptions, we will sustain respondent's determinations.[1]

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3]                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulations and the attached exhibits are incorporated by this reference.  Petitioners resided in Virginia when they filed their petition.

Mandana Zolghadr is a licensed dentist.  She acquired a dental practice in 2002 from a group of dentists and operated this practice as a sole proprietorship during 2006-2009 with several employees.  She incurred expenses in the course of her dentistry practice, including expenses for wages, supplies, advertising, and depreciation on equipment.  She did not maintain adequate books and records to substantiate the expenses for her dental practice during any of the years at issue.

Petitioners owned, either jointly or individually, three houses during the years at issue.  They owned a primary residence in Vienna, Virginia (Vienna property).  They owned a rental property in McLean, Virginia (McLean property), on which they received monthly rent of $1,200 during 2006 and 2007, $1,250 during 2008, and $1,300 during 2009.  Mr. Zolghadr also owned a house in West Virginia (West Virginia property) that he purchased in 2008, which petitioners initially used as a weekend retreat.  He later operated a car dealership on the West Virginia property and sometimes resided there in connection with this activity.

[*4]  Petitioners filed delinquent Forms 1040, U.S. Individual Income Tax Return, for 2006, 2007, and 2008; they filed a timely Form 1040 for 2009.  They included in each of these returns a Schedule C for the dental practice.  For 2006 they reported gross receipts for the dental practice of $398,864, returns and allowances of $5,523, and total expenses of $392,108, for a net profit of $1,233.  The reported expenses were as follows:

| Expense | Amount |
| --- | --- |
| Advertising | $23,097 |
| Car and truck | 558 |
| Commissions and fees | 10,146 |
| Contract labor | 3,815 |
| Section 179/depreciation | 34,809 |
| Insurance | 16,900 |
| Interest | 3,567 |
| Legal and professional fees | 1,096 |
| Office supplies | 4,763 |
| Repairs and maintenance | 6,788 |
| Supplies | 97,738 |
| Taxes and licenses | 2,055 |
| Travel | 28,250 |
| Meals and entertainment | 3,440 |
| Utilities | 4,097 |
| Wages | 149,451 |
| Other | 1,538 |

For 2007 they reported gross receipts of $331,315, returns and allowances of $3,465, and total expenses of $336,455, for a net loss of $8,605.  The reported expenses were as follows:

[*5]

| Expense | Amount |
|---|---|
| Advertising | $7,239 |
| Car and truck | 568 |
| Commissions and fees | 6,781 |
| Contract labor | 623 |
| Section 179/depreciation | 15,464 |
| Insurance | 10,265 |
| Interest | 17,410 |
| Legal and professional fees | 992 |
| Office supplies | 3,820 |
| Repairs and maintenance | 1,139 |
| Supplies | 126,282 |
| Taxes and licenses | 2,845 |
| Travel | -0- |
| Meals and entertainment | 22 |
| Utilities | 5,164 |
| Wages | 137,220 |
| Other | 621 |

For 2008 they reported gross receipts of $347,933, returns and allowances of $2,693, and total expenses of $316,563, for a net profit of $28,677. The reported expenses were as follows:

| Expense | Amount |
|---|---|
| Advertising | $5,939 |
| Car and truck | 5,597 |
| Commissions and fees | 2,213 |
| Contract labor | 454 |
| Section 179/depreciation | 12,275 |
| Insurance | 11,663 |
| Interest | 11,461 |
| Legal and professional fees | 1,393 |
| Office supplies | 6,802 |

**[\*6]**

| Expense | Amount |
|---|---|
| Repairs and maintenance | 1,003 |
| Supplies | 108,093 |
| Taxes and licenses | 41,905 |
| Travel | -0- |
| Meals and entertainment | 87 |
| Utilities | 11,528 |
| Wages | 93,646 |
| Other | 2,504 |

For 2009 they reported gross receipts of $300,503, returns and allowances of $3,165, and total expenses of $310,413, for a net loss of $13,075. The reported expenses were as follows:

| Expense | Amount |
|---|---|
| Advertising | $6,000 |
| Car and truck | -0- |
| Commissions and fees | 8,941 |
| Contract labor | 4,518 |
| Section 179/depreciation | 12,172 |
| Insurance | 11,636 |
| Interest | 6,010 |
| Legal and professional fees | 2,542 |
| Office supplies | 21,330 |
| Repairs and maintenance | 2,431 |
| Supplies | 67,660 |
| Taxes and licenses | 57,542 |
| Travel | 2,500 |
| Meals and entertainment | 184 |
| Utilities | 5,780 |
| Wages | 99,667 |
| Other | 1,500 |

**[*7]**   For 2006-2009 petitioners claimed on their Schedules A deductions for mortgage interest expenses of $40,897, $27,280, $38,674, and $51,607, respectively.  For 2009 petitioners claimed on their Schedule E a deduction for mortgage interest expense of $9,401 attributable to the West Virginia property.

The IRS selected petitioners' 2006-2009 returns for examination.  On the basis of a bank deposits analysis the IRS determined that petitioners had omitted rental income from the McLean property for 2006-2009 and had misreported gross receipts from the dental practice for 2007-2009.  On the basis of third-party information reports the IRS determined that petitioners had omitted dividend income, interest income, and retirement income for 2007.  The IRS disallowed portions of the Schedule C deductions for lack of substantiation and disallowed some or all of the mortgage interest deductions for lack of connection to a primary or secondary residence.  The IRS determined accuracy-related penalties with respect to these adjustments and additions to tax for late filing of petitioners' 2006-2008 returns.  On May 20, 2014, the IRS issued petitioners a timely notice of deficiency setting forth these adjustments, and they timely petitioned this Court.

**[*8]**                                    OPINION

I.      Burden of Proof

The IRS' determinations in a notice of deficiency are generally presumed correct though the taxpayer can rebut this presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The U.S. Court of Appeals for the Fourth Circuit, the appellate venue in this case absent stipulation to the contrary, has held that the usual presumption of correctness applies in omitted income cases where the IRS employs a "reasonable method of determining income," such as the bank deposits method. Williams v. Commissioner, 999 F.2d 760, 763-764 (4th Cir. 1993), aff'g T.C. Memo. 1992-153. Other courts have required the IRS in unreported income cases to establish a "minimal evidentiary showing" connecting the taxpayer with the income-producing activity. E.g., Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636. If the IRS were required to make a "minimal evidentiary showing" here, respondent has met that burden by introducing bank records establishing that petitioners received unreported income from the dental practice and the McLean property.

Petitioners thus bear the burden of proving by a preponderance of the evidence that respondent's determinations of unreported income are arbitrary or erroneous. See Williams, 999 F.2d at 763 (citing Helvering v. Taylor, 293 U.S. 507,

[*9] 515 (1935)); Tokarski v. Commissioner, 87 T.C. 74 (1986). Petitioners likewise bear the burden of proving their entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Petitioners do not contend, and they could not plausibly contend, that the burden of proof as to any issue of fact should shift to respondent under section 7491(a).

II.   Unreported Income

Section 61(a) defines gross income as "all income from whatever source derived," including income derived from business. A taxpayer must maintain books and records establishing the amount of his or her gross income. See sec. 6001. When a taxpayer does not keep accurate books and records, the IRS may determine his or her income "under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b); see Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). And where the taxpayer has unexplained bank deposits, the IRS may employ the bank deposits method to estimate his or her income. Estate of Hague v. Commissioner, 132 F.2d 775 (2d Cir. 1943), aff'g 45 B.T.A. 104 (1941); Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). The IRS has great latitude in reconstructing a taxpayer's income, and

**[\*10]** the reconstruction "need only be reasonable in light of all surrounding facts and circumstances." Petzoldt, 92 T.C. at 687.

Bank deposits are prima facie evidence of income.  The bank deposits method starts with the presumption that all money deposited in a taxpayer's bank account during a given period constitutes taxable income.  Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964).  This presumption is rebutted to the extent the deposits are shown to include nontaxable amounts, and "the Government must take into account any non-taxable source * * * of which it has knowledge."  Ibid.; DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

After the IRS reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the IRS' implementation of the bank deposits method was unfair or inaccurate.  See Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo, 96 T.C. at 871-872.  The taxpayer may do so by showing (among other things) that certain deposits came from nontaxable sources.  See Clayton, 102 T.C. at 645.  Nontaxable sources include funds attributable to inter-account bank transfers and returned checks as well as "loans, gifts, inheritances, or assets on hand at the beginning of the taxable period."  Burgo v. Commissioner,

[*11] 69 T.C. 729, 743 n.14 (1978) (quoting Troncelliti v. Commissioner, T.C. Memo. 1971-72).

The revenue agent (RA) employed the bank deposits method to reconstruct petitioners' income. After obtaining copies of petitioners' bank statements by issuing summonses to their banks, the RA used the statements (which are part of the record) to prepare schedules listing all deposits. After eliminating nontaxable receipts of which she was aware, the RA prepared and provided to petitioners schedules that determined unreported income attributable to the McLean property for 2006-2009 and to the dental practice for 2007-2009.

Petitioners reported rental income from the McLean property of $14,400 annually for 2006-2008 and $12,000 for 2009. The RA determined that petitioners had underreported rental income by $200, $800, $1,200, and $3,600 for 2006-2009, respectively. At trial petitioners conceded that they had underreported their rental income. They contend that the unreported income should not be taxable because it corresponded to rent increases they received in exchange for performing repairs and maintenance to the property.

This contention is meritless. Rent is specifically included in the definition of gross income, sec. 61(a)(5), and represents payment "received or accrued for the occupancy of real estate or the use of personal property," sec. 1.61-8(a), In-

**[*12]** come Tax Regs.  The Code provides no exclusion from gross income where (as commonly occurs) the lessor incurs expenses for repairs or maintenance in consideration of receiving rent.  We accordingly find that petitioners received unreported rental income from the McLean property in the amounts stated above.

With respect to the dental practice, the RA initially performed a bank deposits analysis that considered all of petitioners' bank accounts, both business and personal.  After petitioners provided additional documentation to her, the RA focused her analysis chiefly on one of the business bank accounts, a SunTrust Bank account ending in 5432 (SunTrust account).  On the basis of this analysis she determined that petitioners had understated gross receipts by $6,504 and $12,890 for 2007 and 2008, respectively, and had overstated gross receipts by $27,770 for 2009.  Petitioners contend that the RA failed to account for certain nontaxable items allegedly deposited into this account.

With respect to 2007, petitioners produced a bank statement for November 2007 listing a "miscellaneous credit" of $1,329 that they contend should have been allowed as an offset against the net taxable deposits.  But they failed to establish the nature of this credit; Dr. Zolghadr testified vaguely that it was for "excess deposits" with the bank.  We find that petitioners have failed to carry their burden of

[*13] showing error in the RA's analysis.  We will therefore sustain respondent's determination of unreported income attributable to the dental practice for 2007.

With respect to 2008, respondent concedes that the RA should have eliminated a $10,000 deposit attributable to a nontaxable loan from Dr. Zolghadr's sister.  This leaves in question $2,890 of deposits for 2008.  Petitioners contend that a $5,000 deposit was a loan from Dr. Zolghadr's mother, but the only evidence they submitted was documentation showing that a $5,000 cash deposit was made.  They produced no loan agreement or other evidence to show that this deposit corresponded to a loan from Dr. Zolghadr's mother (or anyone else).  And we do not accept Dr. Zolghadr's testimony on this point, which we did not find credible.  See Tokarski, 87 T.C. at 74.  We accordingly find that petitioners received during 2008 unreported income of $2,890 from the dental practice.

With respect to 2009, the RA determined that petitioners overstated their gross receipts by $27,700, chiefly by misclassifying inter-account transfers as receipts of the dental practice.  Petitioners seek to exclude another $1,500 of deposits, alleging that these were payments for overdraft protection.  But all the documents to which they point concern overdraft protection in accounts other than the SunTrust account, which was the only account on which the RA performed a bank deposits analysis.  We therefore sustain respondent's determination that peti-

[*14] tioners for 2009 overstated gross receipts attributable to the dental practice by $27,770.

The IRS also determined, on the basis of third-party information reports, that petitioners had received the following taxable income in 2007: (1) $24 of dividend income from MetLife; (2) $678 of retirement income from an individual retirement account distribution; and (3) $2,139 of interest income from three banks and an LLC. Petitioners conceded at trial that they received, but failed to report, each of these items. We sustain respondent's determination in each respect.

## III. Schedule C Expenses

Deductions are a matter of legislative grace. The taxpayer bears the burden of proving that reported business expenses were actually incurred and were "ordinary and necessary." Sec. 162(a); Rule 142(a). The taxpayer also bears the burden of substantiating expenses underlying his claimed deductions by keeping and producing records sufficient to enable the IRS to determine the correct tax liability. Sec. 1.6001-1(a), (e), Income Tax Regs. The failure to keep and present such records counts heavily against a taxpayer's attempted proof. Rogers v. Commissioner, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43. In certain circumstances the Court may approximate the amount of an expense if the taxpayer proves it was incurred but cannot substantiate the exact amount. Cohan v. Commissioner, 39

**[\*15]** F.2d 540, 543-544 (2d Cir. 1930).  But the taxpayer must provide some basis for such an estimate.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) imposes stricter substantiation requirements for deductions claimed for expenses of travel, meals, and entertainment.  No such deduction is allowed unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating his own statements, the amount, time and place, and business purpose for each expenditure.  Sec. 274(d); sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017 (Nov. 6, 1985).  A court may not apply the Cohan rule to approximate expenses covered by section 274(d).  Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).

During the examination petitioners produced bank statements, a modest volume of invoices and bills, and QuickBooks summaries with little supporting documentation.  After review of these documents the RA allowed deductions for significant expenses in most expense categories; for certain categories (such as wages and health insurance) she allowed deductions larger than those petitioners had claimed.  Respondent contends that the remaining deductions were properly disallowed because the expenses were not substantiated or were personal ex-

[*16] penses.  See sec. 262(a) (denying deduction for "personal, living, or family expenses").

In the tables below we set forth for each year the Schedule C expenses petitioners reported on their return, the amount the RA allowed as a deduction for each category of expense, and the amount remaining in dispute:

| 2006 | Amount claimed | Amount allowed | Amount in dispute |
|---|---|---|---|
| Interest | $3,567 | -0- | $3,567 |
| Advertising | 23,097 | $22,772 | 325 |
| Health insurance | -0- | 4,614 | -0- |
| Utilities | 4,097 | 3,813 | 284 |
| Repairs and maintenance | 6,788 | 636 | 6,152 |
| Insurance | 16,900 | 5,808 | 11,092 |
| Depreciation and section 179 expense | 34,809 | 16,044 | 18,765 |
| Taxes and licenses | 2,055 | 5,500 | -0- |
| Office supplies | 4,763 | 3,669 | 1,094 |
| Car and truck | 558 | -0- | 558 |
| Commissions and fees | 10,146 | 7,314 | 2,832 |
| NOL carryforward | 42,773 | -0- | 42,773 |
| Other | 1,538 | 75 | 1,463 |
| Wages | 149,451 | 141,797 | 7,654 |
| Meals and entertainment | 3,440 | 65 | 3,375 |

[*17]

| | Amount claimed | Amount allowed | Amount in dispute |
|---|---|---|---|
| Travel | 28,250 | -0- | 28,250 |
| Supplies | 97,738 | 56,068 | 41,670 |

| 2007 | Amount claimed | Amount allowed | Amount in dispute |
|---|---|---|---|
| Interest | $17,410 | -0- | $17,410 |
| Advertising | 7,239 | $2,870 | 4,369 |
| Health insurance | -0- | 5,028 | -0- |
| Utilities | 5,164 | 4,702 | 462 |
| Repairs and maintenance | 1,139 | 741 | 398 |
| Insurance | 10,265 | 4,671 | 5,594 |
| Depreciation and section 179 expense | 15,464 | 12,599 | 2,865 |
| Taxes and licenses | 2,845 | 5,710 | -0- |
| Office supplies | 3,820 | 2,875 | 945 |
| Car and truck | 568 | -0- | 568 |
| Commissions and fees | 6,781 | 3,334 | 3,447 |
| NOL carryforward | 24,241 | -0- | 24,241 |
| Other | 621 | 75 | 546 |
| Wages | 137,220 | 146,093 | -0- |
| Supplies | 126,282 | 54,704 | 71,578 |
| Legal and professional fees | 992 | 1,156 | -0- |
| Contract labor | 623 | 813 | -0- |

[*18]

| 2008 | Amount claimed | Amount allowed | Amount in dispute |
|---|---|---|---|
| Interest | $11,461 | -0- | $11,461 |
| Advertising | 5,939 | $209 | 5,730 |
| Health insurance | -0- | 5,920 | -0- |
| Utilities | 11,528 | 4.965 | 6,563 |
| Repairs and maintenance | 1,003 | 830 | 173 |
| Insurance | 11,663 | 5,675 | 5,988 |
| Taxes and licenses | 41,905 | 15,627 | 26,278 |
| Office supplies | 6,802 | 6,412 | 390 |
| Car and truck | 5,597 | -0- | 5,597 |
| Commissions and fees | 2,213 | 1,963 | 250 |
| NOL carryforward | 51,703 | -0- | 51,703 |
| Other | 2,504 | 75 | 2,429 |
| Wages | 93,646 | 129,455 | -0- |
| Supplies | 108,093 | 63,321 | 44,772 |

| 2009 | Amount claimed | Amount allowed | Amount in dispute |
|---|---|---|---|
| Interest | $6,010 | -0- | $6,010 |
| Advertising | 6,000 | -0- | 6,000 |
| Health insurance | -0- | $6,780 | -0- |
| Utilities | 5,780 | 5,122 | 658 |
| Repairs and maintenance | 2,431 | 600 | 1,831 |
| Insurance | 11,636 | 9,269 | 2,007 |

[*19]

| | | | |
|---|---|---|---|
| Taxes and licenses | 57,542 | 20,809 | 46,733 |
| Office supplies | 21,330 | 5,087 | 16,243 |
| Commissions and fees | 8,941 | 2,111 | 6,830 |
| NOL carryforward | 30,772 | -0- | 30,772 |
| Other | 1,500 | -0- | 1,500 |
| Wages | 99,667 | 138,156 | -0- |
| Travel | 2,500 | -0- | 2,500 |
| Supplies | 67,660 | 34,146 | 33,514 |
| Legal and professional fees | 2,542 | 1,978 | 564 |
| Contract labor | 4,518 | -0- | 4,518 |

At trial petitioners produced few contemporaneous records for the dental practice. They produced tabulations of alleged expenses with attached Quick-Books summaries (prepared just before trial), miscellaneous printouts of Excel spreadsheets for the SunTrust account, other bank account statements, handwritten "personal lists" that allegedly separated business from personal expenses, and a letter that Dr. Zolghadr had sent to the RA. They also presented testimony from Dr. Zolghadr, which we found confusing and in most respects not credible.

At the close of trial the Court left the record open to allow petitioners to submit additional documentary evidence that they had allegedly forgotten to bring with them to trial. They submitted two CD-ROMs containing more QuickBooks

**[\*20]** summaries (again prepared just before trial) and various bank statements and invoices. This additional evidence is little more than a digital shoebox: To the extent these documents substantiate any expenses, they substantiate expenses that the IRS had already allowed.

After carefully reviewing the evidence, we conclude that the deductions petitioners claimed (in excess of amounts respondent allowed) for advertising, utilities, repairs and maintenance, insurance, depreciation, taxes and licenses, office supplies, commissions and fees, travel, supplies, legal and professional fees, contract labor, and "other expenses" have not been substantiated or have not been shown to be business related. We sustain respondent's determination to disallow these deductions to that extent. We also sustain respondent's determination to allow additional deductions that petitioners had not claimed as set forth in the tables above. We will briefly address the remaining items.

• Petitioners reported section 179 expenses for 2006 and 2007. Dr. Zolghadr testified that these amounts were partially attributable to section 179 expenses carried forward from prior years. Section 179(a) allows a taxpayer to elect to expense, rather than capitalize, qualified business property. Qualified business property must be: (1) tangible property to which section 168 applies; (2) section 1245 property; and (3) property "acquired by purchase for use in the active con-

[*21] duct of a trade or business." Sec. 179(d). The taxpayer is required to maintain records reflecting how and from whom the section 179 property was acquired and when it was placed in service. Sec. 1.179-5(a), Income Tax Regs.

In order to expense qualified business property, a taxpayer must make an election to do so by specifying the property to which the election applies and making the election on his tax return. Sec. 179(c). The election is normally made by attaching Form 4562, Depreciation and Amortization, to the taxpayer's return. Visin v. Commissioner, T.C. Memo. 2003-246, aff'd, 122 F. App'x 363 (9th Cir. 2005). If a taxpayer makes this election, he is entitled to a current deduction that cannot exceed the taxable income derived from the active conduct of his business during the year. Sec. 179(b)(3)(A). If the taxpayer cannot expense the full amount, the unused portion is carried forward indefinitely. Sec. 179(b)(3)(B). If the taxpayer fails to make the election, he waives the benefits of section 179. See Patton v. Commissioner, 116 T.C. 206 (2001); Verma v. Commissioner, T.C. Memo. 2001-132; Fors v. Commissioner, T.C. Memo. 1998-158.

Petitioners have failed to meet the substantiation requirements of section 179. Although they filed Forms 4562 for 2006 and 2007, they failed to establish when and from whom they had purchased the supposed equipment, and they failed to establish that they had made a valid section 179 election for years before 2006

**[\*22]** (as would be required to carry forward pre-2006 amounts). The only evidence they submitted was a partially legible sales contract showing a purchase of unspecified equipment for $597 and copies of emails apparently sent by Dr. Zolghadr. These documents do not satisfy the statutory requirements, and we therefore sustain respondent's disallowance of the claimed section 179 expense deductions.

• Petitioners reported an NOL carryforward for each year. Dr. Zolghadr testified that the NOLs were attributable to a condominium unit she purchased in 2002 from a failing dental practice. Unless an exception applies, an NOL must first be carried back 2 years and then carried forward 20 years. Sec. 172(b)(1)(A). If a taxpayer claims an NOL deduction, he must file with his return "a concise statement setting forth * * * all material and pertinent facts relative thereto, including a detailed schedule showing the computation" of the NOL deduction. Sec. 1.172-1(c), Income Tax Regs.

Petitioners have satisfied none of these requirements. They did not attach to any of their returns a concise statement including material and relevant facts or a detailed schedule showing computation of the NOL amount. They have not explained how a condominium could give rise to an NOL for a dental practice. They did not prove that Dr. Zolghadr's dental practice actually incurred losses before 2006 or (if it did) that the NOL had not previously been carried back. On the latter

**[\*23]** point the only evidence was Dr. Zolghadr's testimony that the NOLs were reported on petitioners' prior returns; this was a statement of their position, not proof. See Whitaker v. Commissioner, T.C. Memo. 2010-209. Because petitioners have failed to prove that an allowable NOL existed, we will sustain respondent's disallowance of the NOL carryforward deductions for 2006-2009.

• Petitioners claimed deductions for each year for interest expenses allegedly connected to the dental practice. Mrs. Zolghadr testified that this interest was paid on loans obtained to purchase dental equipment. We did not find this testimony credible. In support she provided bank statements (none of which were for business bank accounts) that listed "finance charges." Petitioners provided no evidence that these finance charges were paid on business rather than personal loans. We will therefore sustain respondent's disallowance of these deductions.

• Petitioners reported wage expenses for the dental practice for each year. Respondent's adjustments on these items largely favored petitioners. For 2006 the IRS determined that they had overstated wage expenses by $7,654; for 2007-2009 the IRS determined that they had understated wage expenses by $8,873, $35,809, and $38,489, respectively. Petitioners nevertheless challenge the disallowance for 2006; the Forms W-3, Transmittal of Wage and Tax Statements, that they supplied to support their challenge, however, show wage expenses $10,000 lower than the

[*24] adjusted amount the IRS has allowed.  Petitioners offered no credible evidence on this point, and we will accordingly sustain respondent's determinations for all four years.

IV.    Mortgage Interest

A.    Schedule A Mortgage Interest

Section 163(h)(1) generally disallows a deduction for personal interest.  For individual taxpayers, an exception to this rule is "qualified residence interest."  Sec. 163(h)(2)(D).  Qualified residence interest is interest that is paid or accrued during the taxable year on "acquisition indebtedness" or "home equity indebtedness" with respect to any "qualified residence" of the taxpayer.  Sec. 163(h)(3)(A).  A "qualified residence" includes the taxpayer's "principal residence" and one other home "which is selected by the taxpayer for purposes of this subsection for the taxable year and which is used by the taxpayer as a residence."  Sec. 163(h)(4)(A)(i).  Both "acquisition indebtedness" and "home equity indebtedness" must be secured by the qualified residence.  Sec. 163(h)(3)(B)(i)(II), (C)(i).

For 2006 petitioners claimed a Schedule A mortgage interest deduction of $40,897, which was attributable to four loans.  The IRS allowed a deduction of $29,897, attributable to two loans secured by the Vienna property.  The IRS correctly disallowed the interest deduction for the third loan because petitioners had

**[\*25]** deducted the same interest on Schedule E as a rental expense of the McLean property. The IRS correctly disallowed the interest deduction for the fourth loan, an $80,000 line of credit, because petitioners provided no evidence that this loan was secured by any real property. We thus sustain respondent's determination for 2006.

For 2007 petitioners claimed a Schedule A mortgage interest deduction of $27,280. The IRS increased this deduction by $2,579. Petitioners agree with this adjustment.

For 2008 petitioners claimed a Schedule A mortgage interest deduction of $38,674. The IRS allowed a deduction of $29,772, attributable to the two loans secured by the Vienna property. At trial petitioners produced a Form 1098, Mortgage Interest Statement, issued by Wachovia showing interest paid on two loans. However, the IRS had already allowed a deduction for the interest on one of these loans, and petitioners produced no evidence to show that the other loan was secured by a primary or secondary residence. We thus sustain respondent's determination for 2008.

For 2009 petitioners claimed a Schedule A mortgage interest deduction of $51,607. The IRS allowed $31,431 of this deduction, again attributable to the two

[*26] loans secured by the Vienna property.[2]  Petitioners again produced a Form 1098 showing interest paid on two loans.  But as was true for 2008, the IRS had already allowed a deduction for the interest paid on one of the loans, and petitioners failed to provide any evidence that the other loan was secured by any real property.  The IRS disallowed an interest deduction with respect to a fourth loan; petitioners on brief did not dispute the basis for this disallowance, and we deem it conceded.  We accordingly sustain respondent's determinations for 2009 in full.

B.    Schedule E Mortgage Interest

For 2009 petitioners filed a Schedule E reporting income from leasing space for a billboard on their West Virginia property.  On this Schedule E they reported mortgage interest expense of $9,401.  They substantiated this expense with a Form 1098 from BB&T Bank and a $146,250 mortgage note secured by the property.

A "qualified residence" for purposes of section 163 includes the taxpayer's primary residence and one other home "which is used by the taxpayer as a residence (within the meaning of section 280A(d)(1))."  To meet the latter requirement the taxpayer must use the home "for personal purposes for a period exceeding the greater of 14 days or 10% of the number of days during the year for which

---

[2]The interest deduction on the second loan was limited because of the $100,000 cap on home equity indebtedness.  See sec. 163(h)(3)(C)(ii).

[*27] the unit is rented at fair rental." Sec. 280A(d)(1). Since petitioners did not rent the West Virginia home, the 14-day test supplies the governing standard here.

Dr. Zolghadr testified that when her husband purchased the property in mid-2008 it was used initially as their secondary residence.[3] Petitioners began receiving rental income from the billboard shortly thereafter, and in 2009 Mr. Zolghadr engaged in some sort of car dealership activity on the property. In connection with this activity, Dr. Zolghadr testified that her husband often resided at the property for extended periods because of its distance from their home in Vienna. Her testimony on this point was credible, and we find that Mr. Zolghadr resided in the West Virginia home for more than 14 days during 2009.

We conclude that petitioners have met their burden of showing that the West Virginia property was a secondary residence and that one or both petitioners resided in it for more than 14 days during 2009. Although petitioners erroneously reported the mortgage interest on Schedule E, we find that they are entitled to an additional Schedule A mortgage interest deduction of $9,401 for 2009.

---

[3]Mr. Zolghadr is fluent only in Farsi, and because of language difficulties he did not testify at trial.

[*28] V.    Additions to Tax and Penalties

Section 6651 provides for an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file the return, not to exceed 25% in toto.  The parties stipulated that petitioners' 2006 and 2007 returns were not filed until October 5, 2009, and that their 2008 return was not filed until November 1, 2009.  Because all three returns were indisputably filed late, respondent has met his burden of production under section 7491(c).

A taxpayer who files his return late is liable for this addition to tax unless he shows that his failure was due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).  In their petition, petitioners did not assign error to respondent's determination that they are liable for late-filing additions to tax.  See Rule 34(b)(4) (adjustments to which error is not assigned are deemed conceded); Swain v. Commissioner, 118 T.C. 358, 358 (2002).  In any event, petitioners produced no evidence that their late filings were due to reasonable cause, and we accordingly sustain the additions to tax.

The Code imposes a 20% penalty on the portion of any underpayment of tax attributable to "[n]egligence or disregard of rules and regulations" or "[a]ny sub-

[*29] stantial understatement of income tax." Sec. 6662(a) and (b)(1) and (2).

Negligence includes "any failure to make a reasonable attempt to comply" with the internal revenue laws. Sec. 6662(c). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). Under section 7491(c) respondent bears the burden of production with respect to the liability of any individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

No penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with respect thereto. The taxpayer bears the burden of proving reasonable cause and good faith. Id. at 444-447. Reasonable cause can be shown by good-faith reliance on the advice of a qualified tax professional. Sec. 1.6664-4(b)(1), (c), Income Tax Regs. Whether the taxpayer actually relies on the advice and whether such reliance is reasonable present questions of fact. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(c)(1), Income Tax Regs. For reliance to be reasonable, the taxpayer must prove (among other things) that he provided "necessary and accurate information to the adviser." Neonatology Assocs., 115 T.C. at 99.

**[\*30]** Respondent has met his burden of production with respect to petitioners' negligence. They presented virtually no credible evidence with respect to their underreporting of income. They maintained wholly inadequate books and records for Dr. Zolghadr's dental practice. And most of the records they did provide were cobbled together shortly before trial and lacked credibility.

Petitioners have woefully failed to establish that they made a good-faith effort to determine their Federal income tax liabilities correctly. Although they hired a tax return preparer for their returns, they presented no credible evidence regarding what if any records they provided to that person to substantiate their income and expenses. Nor have they shown that their return preparer was competent; the preparer's unquestioning acceptance of their obviously inflated Schedule C expenses, in the absence of any plausible books and records, suggests otherwise. We accordingly conclude that all of the underpayments (as redetermined) are attributable to negligence. Alternatively, in the event the Rule 155 computations show that the various understatements of income tax exceed the greater of $5,000 or 10% of the amounts required to be shown on the respective returns, we conclude that those underpayments are attributable to substantial understatements of income tax for which reasonable cause has not been shown.

**[*31]**        To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.