T.C. Memo. 2021-80

UNITED STATES TAX COURT

WILLIAM GEIMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24036-16.                    Filed June 30, 2021.

William Geiman, pro se.

<u>Matthew A. Houtsma</u>, <u>Gretchen W. Altenburger</u>, and <u>Michael T. Garrett</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

URDA, <u>Judge</u>:  Petitioner, William Geiman, is a union electrician who spent
most of 2013 on jobs in various parts of Wyoming and Colorado.  Mr. Geiman
claimed on his 2013 Federal income tax return:  (1) an unreimbursed employee
business expense deduction of $39,392 for meals, lodging, vehicle expenses, and

[*2] union dues and (2) an "other" expense deduction of $6,025. The Internal

Revenue Service (IRS) disallowed these deductions among others, determining a

deficiency of $7,710 as well as an accuracy-related penalty under section 6662(a),[1]

which has since been conceded. We will uphold the IRS' deficiency

determinations in part.

## FINDINGS OF FACT

This case was tried in Denver, Colorado. We draw the following facts from

the parties' stipulations and supporting exhibits, as well as the exhibits and

testimony presented at trial.[2] Mr. Geiman lived in Colorado when he timely filed

his petition.

A.      Mr. Geiman's Ties to the Grand Junction Area

During the year at issue, Mr. Geiman was a licensed journeyman electrician

who owned a trailer home in Clifton, Colorado, as well as a rental property in

nearby Grand Junction, Colorado. Mr. Geiman had lived in Clifton since at least

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect at all relevant times, and all Rule references are to
the Tax Court Rules of Practice and Procedure. We round all monetary amounts to
the nearest dollar.

[2]At trial we reserved ruling on the admissibility of Exhibits 12-P and 13-P,
introduced by Mr. Geiman and asked the parties to brief the Court on the
admissibility of this exhibits. Respondent has withdrawn his evidentiary
objections in his posttrial brief, and they are admitted into evidence.

[**\*3**] 2007 with his 2013 tax return showing that he claimed a home mortgage interest deduction of $6,802 for that year.  Mr. Geiman voted, registered his vehicles, received his mail, spent time with friends, and rafted whitewater rapids in the greater Grand Junction area.

B.    Union Membership and 2013 Work

Mr. Geiman's most significant tie to the Grand Junction area was his home local union, Local 969 of the International Brotherhood of Electrical Workers (IBEW).  His membership in his home local union gave him priority status for jobs in and around Grand Junction.  In December 2012 his status in Local 969 allowed him to work for three weeks on a job within its territory.

In early 2013 work had dried up within Local 969's territory.  Mr. Geiman therefore elected to travel for union jobs that he was able to obtain through other IBEW local unions.  By its nature, employment as a traveling union member was a peripatetic life, as traveling union members were the first to go when an employer reduced its union workforce.

During 2013 Mr. Geiman worked jobs through Local 415 in Cheyenne, Wyoming, Local 68 in Denver, Colorado, and Local 113 in Colorado Springs, Colorado.

[*4]  1.     Local 415

a.     Simpson Electric Project

From January 24, 2013, until a reduction in force on February 1, 2013, Mr. Geiman worked for Simpson Electric Co. at a refinery project in Cheyenne, Wyoming.  During this time Mr. Geiman worked 92 hours and received $3,090 in gross wages.  Local 415 required him to pay a 6% union working dues assessment.  The governing collective bargaining agreement did not provide for reimbursement of fuel, lodging, or meals.

b.     Laramie River Project

After being laid off, Mr. Geiman remained in Cheyenne because he had heard that another job might be forthcoming.  On February 5, 2013, he was dispatched out of Local 415 to work for the Electrical Corporation of America, Inc., at its Laramie River Power Station in Wheatland, Wyoming.  Mr. Geiman stayed on this project until he quit on May 15, 2013, following a plant explosion.

At Laramie River Power Station Mr. Geiman worked 151.5 hours in February, 288 hours in March, 280.5 hours in April, and 160 hours in May.  He

[*5] received subsistence of $30 per day and earned gross wages of $32,317.[3]

Local 415 again required Mr. Geiman to pay a 6% union working dues assessment.

During parts of February and March 2013 Mr. Geiman stayed at the Wyoming Motel in Wheatland, Wyoming. During April 2013 Mr. Geiman moved to a Motel 6 in Wheatland. Mr. Geiman shared his room and the expenses at the Motel 6 with a fellow union member.

2.      Local 68 and Local 113--Sturgeon Projects

After quitting the Laramie River Project in May 2013 Mr. Geiman was unemployed until August 15, 2013. During his period of unemployment, Mr. Geiman spent time in the Grand Junction area and visited several other states.

In August 2013 Mr. Geiman obtained employment with Sturgeon Electric Co. (Sturgeon) through Local 68 in Denver. Over the remainder of the year, Sturgeon sent him to work on four separate projects in different parts of Colorado. First, he worked from August 15 through September 10, 2013, at a project involving a Verizon data center in Englewood, Colorado. Next, he worked at a

---

[3]The record before us does not elucidate the total amount of subsistence to Mr. Geiman and whether it was reflected in his gross wages. We further note that a typographical error in the union wage records relating to the Laramie River Project makes it difficult to discern his wages for April. As neither party challenges the amount of Mr. Geiman's wages, we will accept the amount reported on his 2013 Federal income tax return.

[*6] children's hospital in Highlands Ranch, Colorado, from September 11 to October 20, 2013. He then worked from October 21 to October 27, 2013, at a gold mine in Victor, Colorado (within the jurisdiction of Local 113). Finally, he worked at an Air Force base in Aurora, Colorado, from October 28, 2013, until the end of the year.

All told, Mr. Geiman worked 832 hours during his time with Sturgeon, receiving gross wages of $29,665, from which $1,456 in union dues was deducted. Local 68's collective bargaining agreement did not provide for a provision for reimbursement of travel expenses such as fuel, lodging, or meals. While working at the gold mine Mr. Geiman received a one-time per diem of $500, consistent with Local 113's collective bargaining agreement.[4] Sturgeon included this per diem amount in Mr. Geiman's gross wages.

C.     Tax Return and Notice of Deficiency

Mr. Geiman timely filed his 2013 Federal income tax return, reporting an adjusted gross income (AGI) of $62,019. On his Schedule A, Itemized Deductions, Mr. Geiman reported unreimbursed employee business expenses of

---

[4]Even if a job is received out of one local union hall, if a job's location falls within another local union's geographical area, the workers are covered by the second union's collective bargaining agreement.

[*7] $39,392, tax preparation fees of $125, and other expenses of $6,025. After

applying the statutory limitation, the deductible amount was $44,302.[5]

Mr. Geiman attached Form 2106-EZ, Employee Business Expenses, to his

tax return, which elaborated on these amounts. He explained that the

unreimbursed employee business expenses included lodging of $15,120, meals of

$3,480, and vehicle of $18,594 using the then-applicable mileage rate. He further

reported an additional unreimbursed employee business expense of $2,198 for

union and professional dues.

On another attachment to his 2013 return Mr. Geiman provided additional

information about his "other expenses". Specifically, this deduction consisted of

$1,502 of expenses for his laptop computer, tools, printer, and hard drive, which he

elected to expense under section 179, and job-related expenses of $4,523.[6]

After examination, the IRS sent Mr. Geiman a timely notice of deficiency

disallowing the foregoing deductions.

---

[5]Miscellaneous itemized deductions are allowed only to the extent that the total of such deductions exceeds 2% of the taxpayer's AGI. See sec. 67(a).

[6]Sec. 179 generally permits a taxpayer to elect to deduct the cost of qualifying depreciable property in the year in which the property is placed in service rather than to recover the cost through depreciation. The election is normally made by attaching Form 4562, Depreciation and Amortization, to the taxpayer's return. See Zolghadr v. Commissioner, T.C. Memo. 2017-49, at *21.

[*8]                              OPINION

I.      Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Mr. Geiman does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a)(1) as to any issue of fact.

II.     Legal Background

Mr. Geiman contests the IRS' disallowance of deductions claimed for unreimbursed employee business expenses and for other expenses.[7] Section 162(a) allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". The term "trade or business" includes performing services as an employee. See Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970).

---

[7]The IRS disallowed Mr. Geiman's claimed deduction for tax preparation fees. Mr. Geiman failed to raise this issue in his petition, at trial, or in his posttrial brief, and thus has conceded it. See Rule 34(b)(4); see also Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003); Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986).

[*9]   The taxpayer bears the burden of establishing his entitlement to deductions allowed by the Code and substantiating the amounts of his claimed deductions. See sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.  The failure to keep and present accurate records counts heavily against the taxpayer's attempted proof.  See Rogers v. Commissioner, T.C. Memo. 2014-141, at *17.  Unless specifically enumerated in the Code, no deductions are allowed for personal, living, or family expenses.  See sec. 262(a).

Section 274(d) imposes stricter substantiation requirements for deductions claimed, among others, for travel expenses (including meals and lodging while away from home) and listed property.  No such deduction is allowed unless the taxpayer substantiates by adequate records, or by sufficient evidence corroborating his own statement, the amount, time, place, and business purpose for each expenditure.  See sec. 274(d) (flush language).  Section 1.274-5T(b)(2)(ii) and (iii), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985), defines the term "time" as "[d]ates of departure and return for each trip away from home, and number of days away from home spent on business" and the term "place" as "[d]estinations or locality of travel, described by name of city or town or other similar designation".  For listed property such as an automobile, the taxpayer must

**[*10]** also establish the amount of business use "based on the appropriate measure (i.e., mileage for automobiles * * *), and the total use of the listed property for the taxable period." See sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

"Section 274(d) contemplates that a taxpayer will maintain and produce such substantiation as will constitute proof of each expenditure or use referred to in section 274." Id. para. (c)(1), 50 Fed. Reg. 46017. "A contemporaneous log is not required," but "corroborative evidence required to support a statement not made at or near the time of the expenditure or use must have a high degree of probative value". Id.

In certain circumstances the Court may approximate the amount of an expenditure if the taxpayer proves that it was incurred but cannot substantiate the exact amount (Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). But the taxpayer must provide some basis for such an estimate. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). The Court may not invoke the Cohan rule with respect to expenses covered by section 274(d). See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).

**[*11]** III.     Analysis

A.     Unreimbursed Employee Business Expenses

Mr. Geiman claimed deductions for unreimbursed travel expenses (meals, lodging, mileage) and union dues.

1.     Travel Expenses While Away From Home

A taxpayer may deduct reasonable and necessary travel expenses such as vehicle expenses, meals, and lodging incurred "while away from home in the pursuit of a trade or business".  Sec. 162(a)(2) (emphasis added).  He must show, however, that he was away from home when he incurred the expense, that the expense is reasonable and necessary, and that the expense was incurred in pursuit of a trade or business.  See Commissioner v. Flowers, 326 U.S. 465, 470 (1946).  This deduction is meant to alleviate the burden on taxpayers whose business or employment require them to incur duplicative living expenses.  See, e.g., Kroll v. Commissioner, 49 T.C. 557, 562 (1968).

a.     "[A]way from home"

For purposes of section 162(a)(2), the word "home" has been given a specialized meaning that differs from ordinary usage.  See, e.g., Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), aff'g T.C. Memo. 1995-559; see also Daly v. Commissioner, 72 T.C. 190, 195 (1979), aff'd, 662 F.2d 253 (4th

[*12] Cir. 1981). Specifically, we have interpreted a taxpayer's home to refer to the vicinity of a taxpayer's principal place of business rather than his personal residence. See, e.g., Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Yanke v. Commissioner, T.C. Memo. 2008-131, 2008 WL 2065068, at *3.

"When different from the vicinity of his principal place of employment, a taxpayer's residence may be treated as his tax home if his principal place of business is 'temporary', rather than 'indefinite'." Yanke v. Commissioner, 2008 WL 2065068, at *3; see also Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958). A taxpayer must have incurred substantial continuing living expenses at the permanent place of residence. See James v. United States, 308 F.2d 204, 207-208 (9th Cir. 1962); Barone v. Commissioner, 85 T.C. 462, 465-466 (1985), aff'd without published opinion, 807 F.2d 177 (9th Cir. 1986).

"If a taxpayer cannot show that he had both a permanent and temporary abode for business purposes during the year at issue, he is not entitled to the deduction." Minick v. Commissioner, T.C. Memo. 2010-12, 2010 WL 199954, at *3; see also Deamer v. Commissioner, 752 F.2d 337, 339 (8th Cir. 1985) (explaining that "one who has no principal place of business or a permanent residence is considered an itinerant" who "may not deduct expenses under * * * [section 162]"), aff'g T.C. Memo. 1984-63; Stewart v. Commissioner, 77-2 U.S.

[*13] Tax Cas. (CCH) para. 9617 (10th Cir. 1972), aff'g per curiam T.C. Memo. 1971-307; Lyseng v. Commissioner, T.C. Memo. 2011-226, 2011 WL 4389644, at *3. "Only a taxpayer who lives one place, works another and has business ties to both is in the ambiguous situation that the temporary employment doctrine is designed to resolve." Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981), rev'g T.C. Memo. 1979-299.

In determining whether a taxpayer has a tax home, we have often considered three factors set forth in Rev. Rul. 73-529, 1973-2 C.B. 37. See, e.g., Lyseng v. Commissioner, 2011 WL 4389644, at *3; Minick v. Commissioner, 2010 WL 199954, at *4; see also Henderson v. Commissioner, 143 F.3d at 500. Specifically, we have examined whether the taxpayer (1) incurs duplicate living expenses while traveling and maintaining the home, (2) has personal and historical connections to the home, and (3) has a business justification for maintaining the home. See Lyseng v. Commissioner, 2011 WL 4389644, at *3; Yanke v. Commissioner, 2008 WL 2065068, at *3.

On the facts before us we conclude that Mr. Geiman had a tax home of Clifton, Colorado, for 2013. As an initial matter, we have found that Mr. Geiman's work consisted of a series of temporary jobs in Wyoming and Colorado, each of

[*14] which lasted no more than a few months.  Given the nature of these jobs, we conclude that Mr. Geiman did not have a principal place of business in 2013.

The factors set forth in Rev. Rul. 73-529, supra, support the conclusion that Mr. Geiman was not an itinerant but had a tax home in Clifton.  First, the record shows that Mr. Geiman incurred substantial continuous living expenses in the form of mortgage payments, as evidenced by both his 2013 tax return on which he claimed the home mortgage interest deduction and his monthly credit card statements showing mortgage payments.  Second, Mr. Geiman had significant personal and historical ties to Clifton, persuasively testifying at trial that he had been a resident at least since 2007 and that his nonwork life was firmly centered there.

Finally, Mr. Geiman's relationship with his home local union gives him an adequate business justification for making his home in Clifton.  See Lyseng v. Commissioner, 2011 WL 4389644, at *3; Williams v. Commissioner, T.C. Memo. 1990-467, 1990 WL 124573.  We have previously identified a taxpayer's membership in and continued contacts with a local union as a business justification for maintaining a tax home away from temporary jobs.  See Lyseng v. Commissioner, at *3; Williams v. Commissioner, 1990 WL 124573.

[*15] Mr. Geiman testified convincingly how important it is for a union member to be faithful and to have a continuous membership in a home local. In addition to job referrals near or far, he explained that fidelity to one's home local stands a person in good stead among union peers who are critical to learning about and obtaining union jobs. Mr. Geiman's home local also had been a direct source of a job in Grand Junction as recently as December 2012, distinguishing this case from others in which a taxpayer had little hope of finding employment near his residence. Cf. Yanke v. Commissioner, 2008 WL 2065068, at *3.

We accordingly conclude that Mr. Geiman was away from home for purposes of section 162(a)(2) during the year at issue.

b.      Claimed Travel Expenses

i.      Meals

Rev. Proc. 2011-47, sec. 4.03, 2011-42 I.R.B. 520, 522-523, states that employees who are not reimbursed by their employers may substantiate the amount of deductible meal and incidental expenses by using an amount computed at the Federal per diem rate for the locality of travel for each calendar day they are traveling away from home. This amount is deemed substantiated for purposes of section 1.274-5T(b)(2)(i) and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985), provided the employee substantiates the elements of

**[\*16]** time, place, and business purpose of the travel for that day or partial day in accordance with those regulations.  See Rev. Proc. 2011-47, sec. 4.03.

Mr. Geiman has offered sufficient substantiation to deduct the Federal per diem rate for the Simpson Electric project in Cheyenne for 9 days and for the Sturgeon projects in the Denver area for 77 days.  As to the former, the records of Local 415 establish the time, place, and business purpose of Mr. Geiman's travel from January 24 until February 1, 2013.  During that period Mr. Geiman worked 92 hours on the Simpson Electric project, with his bank card statements confirming his presence in and around Cheyenne.  Mr. Geiman worked, on average, more than 10 hours a day during this period, and we will recognize the entire nine days for purposes of the Federal per diem rate.

Mr. Geiman likewise substantiated the time, place, and business purpose of his Sturgeon travel.  Sturgeon's records show that Mr. Geiman worked 832 hours from August 15 until December 31, 2013, in a number of locations around the greater Denver and Colorado Springs areas.  These records are corroborated by Mr. Geiman's bank card statements.

Although the period Mr. Geiman worked for Sturgeon covered 139 calendar days, we will not recognize the entire period for purposes of the Federal per diem rate.  We will first subtract the seven days from October 21 through October 27,

[*17] 2013, during which Mr. Geiman worked for Sturgeon at a gold mine in Victor, Colorado, as the record establishes that he received a per diem for this period. We will further subtract the 40 weekend days during this period as Mr. Geiman neither testified nor introduced any other evidence that showed his whereabouts during the relevant weekends, much less established any business purpose. Mr. Geiman accordingly may deduct the applicable Federal per diem rate for 92 days during his time working for Sturgeon.[8]

ii.    Lodging

Mr. Geiman has not introduced any evidence regarding his lodging expenses during the times of the Simpson Electric project and the Sturgeon projects. He thus is not entitled to deduct lodging expenses for either.

Mr. Geiman has introduced a handful of receipts from the Wyoming Motel and Motel 6 during his time on the Laramie River project. Specifically, he offered the following receipts from the Wyoming Motel: (1) $604 for 21 nights starting February 4, 2013, (2) $403 for 14 nights starting February 25, 2013, and (3) $371

---

[8]Mr. Geiman received subsistence payments in connection with the Laramie River project and thus is not entitled to deduct his meals expenses for that period. We further note that the 101 days were spread across work for two distinct employers, i.e., Simpson Electric and Sturgeon. The computation of the per diem amount should take into account that Mr. Geiman had four days that were either the first or last day of employment, which dictates a lower deduction amount.

[*18] for 7 nights starting March 25, 2013.[9] Mr. Geiman also introduced a Motel 6

receipt for April reflecting a payment of $1,108, although he conceded at trial that

he shared the room and expenses with another union member. Mr. Geiman

incurred these lodging expenses during his time at the Laramie River project,

where he worked 151.5 hours in February, 288 hours in March, and 280.5 hours in

April.

We conclude that Mr. Geiman has substantiated the time, place, and

business purpose of the travel underlying the foregoing lodging expenses. As Mr.

Geiman concedes that he shared a room, we will halve the Motel 6 amount from

$1,108 to $554. Mr. Geiman thus may deduct $1,932 with respect to his lodging.[10]

---

[9]Mr. Geiman introduced a few more receipts from the Wyoming Motel, but they addressed a smaller portion of the stays detailed above. In addition he did not introduce any lodging receipts from March 11 through March 24. He thus is not entitled to any deductions for those days.

[10]At trial Mr. Geiman attempted to rely on a per diem rate to calculate the deductible amount for his lodging expenses. The per diem allowance on which he seeks to rely, however, applies only to employers for reimbursement of lodging and not employees such as Mr. Geiman. See Harris v. Commissioner, T.C. Memo. 2012-312, at *7 n.4.

**[*19]**                              iii.    Vehicle Expenses

On his Schedule A Mr. Geiman reported car and truck expenses of $18,594, based on driving 32,910 business miles.  At trial he lowered this amount to 10,789 business miles.

On the basis of the records before us Mr. Geiman has substantiated 1,613 business miles.  We take judicial notice of a few distances:  (1) the distance between Clifton, Colorado, and Cheyenne, Wyoming, is 335 miles; (2) the distance between Clifton, Colorado, and Denver, Colorado, is 238 miles; (3) the distance between the Wyoming Motel and the Laramie River Power Station is 6.5 miles, and (4) the distance between Motel 6 in Wheatland, Wyoming, and the Laramie River Power Station is 7.8 miles.

Mr. Geiman's testimony and bank statements establish that in January 2013 he drove from the Clifton area to Cheyenne for his work at the Simpson Electric project, returning in May.  His testimony and bank statements further show that he drove from the Clifton area to Denver in August for his work on the Sturgeon projects.  He thus has substantiated 908 business miles for these three drives.

As explained previously, Mr. Geiman has established that he stayed (for business reasons) at the Wyoming Motel for 29 business days (February 5 to March 10, 2013, and March 25 to April 1, 2013) and that he stayed at Motel 6 for

[*20] 21 business days (total business days in April). Mr. Geiman has shown business mileage of 705 miles, the distance he traveled going to and from the Laramie River Power Station for each business day during these periods.

Mr. Geiman attempted to substantiate further amounts of business mileage by introducing a number of Google Maps printouts that purportedly reflected his driving distances during the Simpson Electric project and the Sturgeon projects. He failed, however, to provide the Court adequate information regarding the starting and ending points he picked, and thus has failed to substantiate any amounts in excess of 1,613 miles.

### 2. Union and Professional Dues

On his tax return Mr. Geiman also reported expenses of $2,198 in union and professional dues. He provided a historical payroll register in connection with the Sturgeon projects, showing $1,456 of union dues deducted from his pay from August to December 2013.[11] In addition he submitted a letter from Local 415 stating that he was required to pay a 6% union working dues assessment during his employment at Simpson Electric project and Laramie River project. We conclude that, under the Cohan rule, Mr. Geiman has substantiated $2,124 of union dues

---

[11]Presumably this amount is paid to both Local 68 and Local 113, since Mr. Geiman obtained employment at the Sturgeon projects through Local 68 and later worked at a gold mine within the jurisdiction of Local 113.

[*21] paid (6% × $3,090 + 6% × $32,317) while working under Local 415's jurisdiction.

Accordingly, we conclude that Mr. Geiman has adequately substantiated his entitlement to deductions for unreimbursed employee business expenses for union dues of $3,580.[12]

B.      Other Expenses

Mr. Geiman deducted other expenses of $1,502 in section 179 expenses and $4,523 in job-related expenses.  In an effort to substantiate the section 179 expenses he submitted a receipt for $302 showing the purchase of a printer and a hard drive.  In addition he vaguely testified that the following charges on his debit card statements were deductible job-related expenses:  (1) $772 for a suit and a tie to attend a Christmas party at work, (2) lift tickets to Copper Mountain, (3) a restaurant meal, and (4) a concert ticket.

Mr. Geiman has failed to explain or offer any evidence to support how any of those expenditures qualified as ordinary and necessary business expenses within the meaning of section 162, especially in the light of the nature of his occupation.

---

[12]Our deficiency jurisdiction gives us authority to redetermine the amount of the deduction for union dues claimed on Mr. Geiman's return.  See sec. 6214; see also Naftel v. Commissioner, 85 T.C. 527, 533 (1985); Odujinrin v. Commissioner, T.C. Memo. 2014-213, at *13-*14 (allowing a deduction of accounting and legal fees of $3,004 even though the taxpayer claimed only $1,600 on his tax return).

[*22] Additionally, he has not presented any evidence to explain, much less substantiate, the remaining expenses at issue.

We accordingly sustain respondent's disallowance of the deductions in this category.[13]

IV.    Conclusion

In sum, we find that Mr. Geiman has substantiated meals expenses for 101 days, $1,932 of lodging expenses, 1,613 business miles driven, and $3,580 of union and professional dues.  We sustain the IRS' disallowance of the remaining miscellaneous itemized deductions at issue.

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[13]At trial Mr. Geiman asserted that he was also entitled to a deduction for "casualty losses".  We will not consider this issue because Mr. Geiman did not plead the issue and raised it for the first time at trial.  See Ramig v. Commissioner, T.C. Memo. 2011-147, 2011 WL 2555320, at *5, aff'd, 496 F. App'x 756 (9th Cir. 2012).  In any event this claim is patently groundless.