T.C. Memo. 2021-79

UNITED STATES TAX COURT

ENGEN ROBERT NURUMBI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13445-18.                    Filed June 30, 2021.

Engen Robert Nurumbi, pro se.

<u>Rebecca E. da Costa</u>, <u>John R. Gordon</u>, and <u>Michael R. Harrel</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  In a notice of deficiency dated May 23, 2018, respondent

determined the following income tax deficiency, addition to tax, and accuracy-

related penalty:[1]

---

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Accuracy-related penalty sec. 6662(a) |
|------|-----------|--------------------------------|----------------------------------------|
| 2015 | $193,784 | $46,597 | [1]$38,757 |

[1] Respondent conceded this penalty.

The issues for decision for the year in issue are whether petitioner: (1) failed to report gross receipts of $542,420 from Uber Technologies, Inc. (Uber), on his Schedule C, Profit or Loss From Business; (2) failed to report other income of $755 from Uber; (3) overreported wages by $18,810; (4) is entitled to a Schedule C deduction in an amount greater than respondent allowed;[2] and (5) is liable for the addition to tax under section 6651(a)(1) for failure to file a timely return.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated in our findings by this reference. Petitioner was a resident of Arizona when he timely filed his petition.

Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2] Respondent allowed Schedule C deductions of $157,803 for amounts paid to others, $143,665 for fees paid to Uber, and $12,389 for interest paid on vehicle title loans. Petitioner maintains that he is entitled to a greater amount of Schedule C deductions.

[*3] I. Background

During 2015 petitioner maintained an Uber account in his own name. He connected it to a Bank of America account (BoA account) owned by Auto Electronics, Parts and More, LLC (Auto LLC), an entity which he formed under Arizona law in September 2013. He and his wife were the only members listed on Auto LLC's articles of organization until those articles were amended in May 2015 to remove his wife, leaving petitioner as the sole member of Auto LLC for the remainder of 2015. During 2015 Auto LLC also maintained a BBVA USA account (BBVA account). Petitioner maintained control over both accounts during the year in issue.

The Uber account and mobile application (Uber app) allowed petitioner to provide transportation to passengers in exchange for variable fares. Various individuals drove under petitioner's Uber account during the year in issue. He recruited friends and family to sign up for Uber under his account, and they rented his vehicles, which he had purchased using car title loans or at auctions. The drivers could access the Uber app to see their trips driven and fares collected, but all fare proceeds (net of Uber's fee as explained below) were paid directly to petitioner's Uber account. There were no written contracts between petitioner and the drivers.

[*4]   Every week Uber would pay petitioner for his own driving activity and for that of the drivers under his Uber account, subtracting its fee[3] and depositing the remaining funds into the BoA account.  Petitioner would withdraw funds from the BoA account, deposit some of the withdrawn funds into the BBVA account, and retain the remainder as cash.  Then he would pay the drivers their individual earnings, as shown on the Uber weekly statements, routinely withholding $250 as a vehicle rental charge and occasionally reimbursing the drivers for gas, vehicle maintenance, and other miscellaneous expenses.  Some of these payments were made by electronic transfer from the BBVA account and others were made in cash.

Petitioner did not provide the drivers any documentation indicating their payment, and the drivers did not submit receipts for gas, vehicle maintenance, or other miscellaneous expenses.  The drivers did not otherwise keep logs of expenses incurred while driving under petitioner's Uber account.  Petitioner did not keep a log or other document recording how much he paid the drivers, whether by BBVA transfer or in cash.[4]  Petitioner used the BBVA account not only for driver

---

[3] Respondent added up all of these fees, as shown on the Uber weekly statements, to allow a $143,665 Schedule C deduction for fees paid to Uber.  See supra note 2.

[4] Petitioner introduced Form 1099-MISC, Miscellaneous Income, worksheets for amounts paid to the drivers, but he did not provide evidence of how he computed the amounts listed on the worksheets other than his testimony that he referenced the weekly Uber statements.  The Internal Revenue Service (IRS) has

[*5] payments and vehicle expenses, but also for meal, entertainment, residential, and other miscellaneous expenses.

## II. Petitioner's Tax Return

Petitioner prepared and untimely filed his 2015 Form 1040, U.S. Individual Income Tax Return, on April 27, 2017. He filed as head of household, reported wages of $18,810, and claimed the earned income and child tax credits.[5]

Petitioner attached Schedule C for Auto LLC to his 2014 Form 1040. Auto LLC did not file Form 1065, U.S. Return of Partnership Income, for tax year 2015. Auto LLC did not file Form 8832, Entity Classification Election, in 2015.

## III. Respondent's Determination

In the notice of deficiency, respondent determined that petitioner failed to report $542,420 in gross receipts and $755 in other income from Uber. Uber issued a Form 1099-K, Payment Card and Third Party Network Transactions,

---

no record of any Forms 1099 issued by petitioner or Auto LLC for the year in issue. Respondent did, however, use the Uber weekly statements and the BBVA account statements to allow petitioner the $157,803 Schedule C deduction for amounts paid to others. See supra note 2.

[5] The notice of deficiency did not adjust petitioner's filing status. Petitioner was married throughout the year in issue. After trial he informally raised the question of whether Arizona's status as a community property State should cause some of the unreported income to be allocated to his wife. Petitioner did not present facts or evidence challenging the notice of deficiency's use of his head of household filing status or supporting an allocation of any tax items to his wife on the basis of community property law.

[*6] reporting payment of $542,420 to "Engen Nurumbi". It listed petitioner's taxpayer identification number and his home address. Uber also issued petitioner a Form 1099-MISC reporting payment of $755.

Respondent removed petitioner's reported wage income of $18,810 and made computational adjustments for the self-employment tax and earned income and child tax credits. This resulted in the deficiency of $193,784.

Respondent further determined that petitioner is liable for the late-filing addition to tax under section 6651(a)(1). Petitioner's 2015 Form 1040 was due April 15, 2016; it was signed by petitioner on April 25, 2017, and mailed to the IRS on April 27, 2017.

OPINION

I. Burden of Proof

Generally, the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." Higbee v. Commissioner, 116 T.C. 438, 442 (2001). Petitioner has neither claimed nor shown that he has introduced credible evidence sufficient to shift the burden of

**[\*7]** proof to respondent under section 7491(a) as to any relevant factual issue. Therefore, petitioner generally bears the burden of proof.

In cases involving unreported income the Court of Appeals for the Ninth Circuit, to which any appeal in this case would ordinarily lie, see sec. 7482(b)(1)(A), has held that the Commissioner must introduce some evidence linking the taxpayer with an alleged income-producing activity or demonstrate that the taxpayer actually received unreported income before the presumption of correctness attaches to the deficiency determination, Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982). The requisite evidentiary foundation is minimal and need not include direct evidence. See Weimerskirch v. Commissioner, 596 F.2d 358, 360-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977). Once the Commissioner has established this foundation, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations were arbitrary or erroneous. See Hardy v. Commissioner, 181 F.3d 1002, 1004-1005 (9th Cir. 1999), aff'g T.C. Memo. 1997-97. As discussed below, respondent has established a sufficient evidentiary foundation to satisfy this threshold burden as it relates to his determination of petitioner's unreported income.

**[*8]** II.  <u>Evidentiary Issues</u>

Before we turn to our analysis, we must address the admissibility of documents petitioner offered in his posttrial motion to reopen the record. Respondent objected to certain documents on grounds of relevance, unfair prejudice, hearsay, and summaries to prove content.[6]

Reopening the record for a party to submit additional evidence lies within the Court's discretion.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971); Butler v. Commissioner, 114 T.C. 276, 286-287 (2000); see also Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 363 (9th Cir. 1974) ("[T]he Tax Court's ruling [denying a motion to reopen the record] is not subject to review except upon a demonstration of extraordinary circumstances which reveal a clear abuse of discretion."), aff'g T.C. Memo. 1971-200.  We will not grant a motion to reopen the record unless, among other requirements, the evidence a party is submitting is not merely cumulative or impeaching, is material to the issues involved, and probably would change some aspect of the outcome of the case. Butler v. Commissioner, 114 T.C. at 287; see also SEC v. Rogers, 790 F.2d 1450, 1460 (9th Cir. 1986) (explaining that the trial court "should take into account, in

---

[6] Respondent did not object to other documents, including those showing 2015 interest expenses petitioner incurred for vehicle title loans.  This led respondent to concede an additional $12,389 in Schedule C deductions for interest expenses.  See supra note 2.

**[*9]** considering a motion to hold open the trial record, the character of the additional * * * [evidence] and the effect of granting the motion"), <u>overruled on other grounds by</u> <u>Pinter v. Dahl</u>, 486 U.S. 622 (1988); <u>Zolghadr v. Commissioner</u>, T.C. Memo. 2017-49, at *20 (holding that the additional evidence a taxpayer submitted after trial was "little more than a digital shoebox:  To the extent these documents substantiate any expenses, they substantiate expenses the IRS had already allowed").

In deciding motions to reopen the record, courts have considered when the moving party knew that a fact was disputed, whether the evidentiary issue was foreseeable, and whether the moving party had reason for the failure to produce the evidence earlier.  <u>See, e.g.</u>, <u>George v. Commissioner</u>, 844 F.2d 225, 229-230 (5th Cir. 1988) (and cases cited threat) (holding that refusal to reopen the case was not an abuse of discretion because the issue was foreseeable to the taxpayers and the Court could see no excuse for the taxpayers' failure to produce evidence earlier), <u>aff'g</u> <u>Frink v. Commissioner</u>, T.C. Memo. 1984-669.  We also balance the moving party's diligence against the possible prejudice to the nonmoving party.  <u>Donoghue v. Commissioner</u>, T.C. Memo. 2019-71, at *44.  In particular we consider whether reopening the record after trial would prevent the nonmoving party from examining and questioning the evidence as it would have during the proceeding.  <u>See, e.g.</u>, <u>Estate of Freedman v. Commissioner</u>, T.C. Memo. 2007-61, 2007 WL

**[\*10]** 831802, at \*12; <u>Megibow v. Commissioner</u>, T.C. Memo. 2004-41, 2004 WL 309153, at \*7.

These considerations weigh against granting petitioner's motion to reopen the record. The character of the evidence petitioner attached to his motion is that of hearsay and impermissible summary. <u>See</u> Fed. R. Evid. 802, 1006. He offers it to prove facts that were foreseeably at issue at trial, namely the substantiation of business expenses and how he organized his Uber driving operation. And to the extent petitioner does not use it to prove relevant facts, he uses it to impeach the credibility of the revenue agent who testified at trial. Petitioner cites his medical history as reason for failure to produce evidence at trial, and respondent does not object to certain medical history documents petitioner attached to his motion. We are sympathetic to petitioner's health issues, but to the extent the documents discuss petitioner's health, they cover periods in early 2018, before respondent issued the notice of deficiency and well before the trial in this case. And petitioner understood the issues to be addressed at trial, even bringing a supporting witness to testify. Finally, and most importantly, respondent could not examine this evidence at or before trial. In his response to petitioner's motion, respondent lists relevant questions he would have asked on cross-examination had he been given the opportunity; the effect of granting petitioner's motion would be to deny respondent that opportunity.

**[*11]** Accordingly, we will grant petitioner's motion only to the extent of concessions made by respondent. We will deny his motion in all other respects.

III. Unreported Income

Section 61(a) provides that gross income means "all income from whatever source derived". See Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). A taxpayer is responsible for maintaining adequate books and records sufficient to establish his income. See sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). As stated above, the Commissioner must base his determination that the taxpayer received unreported income on "some substantive evidence" for the presumption of correctness to attach. Hardy v. Commissioner, 181 F.3d at 1004-1005.

During the year in issue petitioner earned income by driving for Uber and by having others drive for Uber under his account. The Forms 1099-K and 1099-MISC that Uber issued to petitioner are supported by the Uber weekly statements and deposits into the BoA account. In his petition, petitioner does not dispute that the Forms 1099-K and 1099-MISC accurately reflect the amounts Uber paid him.[7]

---

[7] While petitioner does not dispute the amount paid by Uber, he does argue that those payments should not be includable in his gross income but rather in the gross income of Auto LLC. This argument is unavailing. The Forms 1099-K and 1099-MISC and the Uber weekly statements list Mr. Nurumbi, not Auto LLC, as the recipient of the payments. Moreover, petitioner maintained the Uber account in his own name. That he linked his Uber account to a bank account owned by

[*12] We find that respondent based his determination that petitioner received unreported income on sufficient evidence.  Petitioner did not meet his burden of proving that the adjustments to his Schedule C gross income or other income were erroneous, and he did not provide evidence refuting the corresponding adjustment to his reported wage income. We therefore sustain respondent's determination that for the year in issue petitioner failed to report gross receipts of $542,420 and other income of $755, and we sustain the corresponding determination that petitioner overreported his wage income by $18,810.

IV.  Schedule C Deductions

Petitioner claims that he is entitled to Schedule C deductions greater than the amounts respondent allowed.

---

Auto LLC--a link he could change and an account over which he exercised control--does not shift the income to Auto LLC.  See Frey v. Commissioner, T.C. Memo. 2019-62, at *7 ("The determination of the proper taxpayer depends upon which person or entity in fact controls the earning of the income rather than who ultimately receives the income.").

And even if the income were taxable to Auto LLC, petitioner has not shown that 100% of Auto LLC's income would not be reported by or allocable to him individually anyway.  If Auto LLC were a disregarded entity for 2015, the income would still be reported on petitioner's Schedule C, as he reported it for tax year 2014.  See 6611, Ltd. v. Commissioner, T.C. Memo. 2013-49, *49-*50 (analyzing classification of entity owned by husband and wife in community property State); Rev. Proc. 2002-69, 2002-2 C.B. 831.  If Auto LLC were a partnership for 2015, petitioner has not shown that his distributive share of Auto LLC's income would be anything less than 100%.

**[*13]** A. <u>Legal Background</u>

Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business or it arises from a transaction "of common or frequent occurrence in the type of business involved." <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940). An expense is "necessary" if it is "appropriate and helpful" to the taxpayer's business, but it need not be absolutely essential. <u>Commissioner v. Tellier</u>, 383 U.S. 687, 689 (1966) (quoting <u>Welch v. Helvering</u>, 290 U.S. at 113). In contrast, a taxpayer may not deduct personal, living, or family expenses unless the law expressly provides otherwise. Sec. 262(a). The determination of whether an expense satisfies the requirements of section 162 is a question of fact. <u>Cloud v. Commissioner</u>, 97 T.C. 613, 618 (1991) (citing <u>Commissioner v. Heininger</u>, 320 U.S. 467, 473-475 (1943)).

Taxpayers bear the burden of proving that they are entitled to any deductions claimed. Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). Taxpayers, therefore, are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability. Sec. 6001; <u>Higbee</u>

**[\*14]** v. Commissioner, 116 T.C. at 440.  Under the Cohan rule, the Court may estimate the amount of the expense if the taxpayer is able to demonstrate that he has paid or incurred a deductible expense but cannot substantiate the precise amount, as long as he produces credible evidence providing a basis for the Court to do so.  Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).  For the Court to estimate the amount of an expense, there must be some basis upon which an estimate can be made.  Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), aff'g in part, rev'g in part T.C. Memo. 1989-390.  Otherwise an allowance would amount to "unguided largesse."  Id. (quoting Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957)).

Certain business expenses are subject to the heightened substantiation requirements of section 274(d).  Section 274(d) supersedes the Cohan rule.  Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Section 274(d) contemplates that no deduction or credit shall be allowed on the basis of the taxpayer's mere approximations or unsupported testimony.  To meet the requirements of section 274(d), a taxpayer must substantiate the following by adequate records or by sufficient evidence corroborating the taxpayer's own statement:  (1) the amount of the expense, (2) the time and place of the travel or use, and (3) the business purpose of the expense.

[*15] To substantiate by adequate records, the taxpayer must provide: (1) an account book, log, or similar record, and (2) documentary evidence, which together are sufficient to establish each element with respect to an expenditure. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Id. subpara. (1). If a taxpayer cannot substantiate each element of an expense with adequate records, he may do so "by other sufficient evidence", namely "[b]y his own statement, whether written or oral, containing specific information in detail as to such element" and "[b]y other corroborative evidence sufficient to establish such element." Id. subpara. (3), 50 Fed. Reg. 46020.

A taxpayer must meet these heightened substantiation requirements to claim a deduction "with respect to any listed property (as defined in section 280F(d)(4))". Sec. 274(d)(4). Section 280F(d)(4)(A)(ii) defines listed property to include "any * * * property used as a means of transportation". Section 280F(d)(4)(C) provides, however, that listed property does not include "property substantially all of the use of which is in a trade or business of providing to unrelated persons services

[*16] consisting of the transportation of persons or property for compensation or hire."[8] See Howard v. Commissioner, T.C. Memo. 2015-38, at *11-*12 (holding that a taxpayer's expenses incurred with respect to a truck used in long-distance trucking were not subject to heightened substantiation requirements of section 274(d)(4)); Baker v. Commissioner, T.C. Memo. 2014-122, at *6 (holding that a taxpayer's expenses incurred with respect to a Mack Truck tractor used to haul tank trailers were not subject to heightened substantiation requirements of section 274(d)(4)).

## B. Vehicle Expenses

We begin by deciding whether the section 280F(d)(4)(C) exception to the heightened substantiation requirement applies because the parties do not dispute that, at least in part, petitioner's expenses related to vehicles used to transport persons and property for compensation or hire.

Petitioner has not shown that "substantially all of the use" of his vehicles was "in a trade or business of providing to unrelated persons services consisting of the transportation of persons or property for compensation or hire." Sec.

---

[8] The applicability of sec. 280F(d)(4)(C) was not addressed by the parties before or at trial. We therefore ordered the parties to file posttrial briefs. We asked respondent to address whether the application of the exception would affect admissibility of, and weight given to, any of the documents attached to petitioner's motion to reopen the record. We asked petitioner to explain how the documents he offered would allow the Court to make a reasonable estimate of the expenses incurred.

[*17] 280F(d)(4)(C). Unlike the taxpayers' vehicles in <u>Baker</u> and <u>Howard</u>, which were used in commercial trucking and therefore less likely to be used for personal purposes, petitioner's vehicles were SUVs or passenger trucks. Petitioner did not introduce evidence that he had a separate vehicle for personal use. He did not keep track of how the drivers used his vehicles, did not have a contract with those drivers restricting their use of his vehicles, and stored vehicles at his personal residence. Therefore, petitioner failed to show that his vehicle expenses satisfy the section 280F(d)(4)(C) exception. Accordingly, his vehicles are listed property under section 280F(d)(4)(A)(ii) and he must satisfy the heightened substantiation requirements under section 274(d).

Petitioner failed to meet this heightened substantiation requirement. While some of petitioner's documents show expenses that may have related to his business, he failed to do the work necessary to separate personal expenses from business expenses or provide the underlying documents for those expenses. <u>See</u> <u>Rutz v. Commissioner</u>, 66 T.C. 879, 882-886 (1976) (disallowing business expense deductions because the taxpayer could not establish the business purpose for each expense); <u>Longino v. Commissioner</u>, T.C. Memo. 2013-80 (disallowing travel-related business expense deductions because the taxpayer did not differentiate his travel purposes between business and personal), <u>aff'd</u>, 593 F. App'x 965 (11th Cir. 2014). To the extent these documents substantiate any expenses, they substantiate

[*18] expenses the IRS had already allowed. See Zolghadr v. Commissioner, at *20. Thus, petitioner has not satisfied his burden to maintain sufficient records, and he is not entitled to Schedule C deductions in an amount greater than respondent has already allowed.

### C. Payments to Drivers

Finally, we do not allow a deduction or offset against gross receipts in an amount greater than respondent already conceded for the payments petitioner made to his drivers from the amounts he was paid by Uber. Respondent conceded that petitioner is entitled to a $157,803 Schedule C deduction for payments to drivers made through the BBVA account (computed by comparing weekly payments from Uber to corresponding transfers out of the BBVA account). While petitioner testified credibly that he also paid his drivers in cash out of those proceeds, he gave us no basis on which to estimate how much he paid, and we are unable to hazard a guess as to what additional amounts might be properly deducted or excluded from his gross receipts. Without such a basis, any additional allowance would amount to unguided largesse. See Williams, 245 F.2d at 560.

## V. Addition to Tax

Section 6651(a)(1) authorizes an addition to tax for failure to file a timely return unless a taxpayer shows that such failure was due to reasonable cause and not willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985). The

[*19] Commissioner bears the burden of production for this addition to tax for individuals. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447. We have held that, as part of that burden, the Commissioner must introduce evidence showing that the taxpayer did not file his return (or a request for extension of time) by the original due date of the return. Wheeler v. Commissioner, 127 T.C. 200, 207-208 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

Petitioner's Form 1040 was due April 15, 2016. Respondent produced petitioner's 2015 Form 1040, and petitioner confirmed that he did not sign and mail it until over a year after the deadline, on April 25, 2017 and April 27, 2017, respectively. This is consistent with the IRS' Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, which shows that it did not process petitioner's return until May 1, 2017. Respondent has satisfied his burden of production.

Petitioner argues that we should apply the reasonable cause exception because he believed he had already timely filed a 2015 Form 1040 before filing the late-filed return. Whether a taxpayer has "reasonable cause" within the meaning of section 6651(a)(1) depends on whether the taxpayer "exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'" Boyle, 469 U.S. at 246 (quoting section 301.6651-1(c)(1), Proced. & Admin. Regs.). Petitioner's mistaken belief that he had already filed a

**[\*20]** return within the prescribed time does not constitute reasonable cause. <u>See</u>

<u>Henningsen v. Commissioner</u>, 26 T.C. 528, 536 (1956) ("Mere uninformed and

unsupported belief by a taxpayer, no matter how sincere that belief may be, that he

is not required to file a tax return, is insufficient to constitute reasonable cause for

his failure so to file."), <u>aff'd</u>, 243 F.2d 954 (4th Cir. 1957).  Therefore, we hold that

petitioner is liable for the section 6651(a)(1) addition to tax in issue as determined

by respondent.

Any contentions we have not addressed we deem irrelevant, moot, or

meritless.

To reflect the foregoing,

<u>An appropriate order will be issued,</u>

<u>and decision will be entered under Rule 155</u>.